**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Charles Phillip HOMBURG,
Defendant-Appellant.**

**No. 75–3769.**

United States Court of Appeals,
Ninth Circuit.

Nov. 22, 1976.

Rehearing Denied Jan. 31, 1977.

§ 841(a)(1) and possession of cocaine in violation of 21 U.S.C. § 844. All issues presented on appeal revolve around the central question of the constitutionality of a search of appellant's suitcase.

On September 16, 1975, appellant passed through security inspection at Western Airlines Gate One at San Diego International Airport. His carry-on suitcase was subjected to x-ray inspection and he went through the magnetometer. Just prior to his arrival at the inspection point, security officers there were notified that an anonymous bomb threat had been received at the airport.

As appellant passed through the inspection point, security officers observed a rectangular bulge in the front portion of his trousers, which he awkwardly attempted to conceal with his suitcase. Appellant asked for directions to the men's room and an officer was instructed to follow him there. In the restroom, appellant went inside a toilet stall and the officer heard a "cracking or rustling sound, like a plastic bag or something of that nature" (R.T. at 64), coming from inside the toilet stall. Appellant remained inside the stall for about fifteen minutes. When he exited, the bulge in his trousers was gone and he was carrying his suitcase normally. Appellant then took his place in the boarding line, nervously watching security officers.

Frank T. Vecchione (argued), of Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Terry J. Knoepp, U. S. Atty., Robert D. Krause, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before ELY and TRASK, Circuit Judges, and VAN PELT,* District Judge.

TRASK, Circuit Judge:

Charles Phillip Homburg appeals his conviction for possession of heroin with intent to distribute in violation of 21 U.S.C.

A security officer approached appellant and told him he would have to be reinspected before boarding the plane. Appellant complied and returned to the inspection area, but upon arrival indicated to the officer that he wanted to leave the boarding area. Testimony varies as to the precise words appellant used, but there is no dispute that appellant indicated that he wished to leave the boarding area and that he took a step or two in that direction before being forcibly detained. The suitcase was then opened, contraband discovered and appellant was placed under arrest. On a motion to suppress the evidence seized

* Honorable Robert Van Pelt, Senior United States District Judge, Lincoln, Nebraska, sitting by designation.

from his suitcase, the trial court held that the search was "reasonable . . . under the general implied consent doctrine." (R.T. at 105.)

The government argues that the search of appellant took place in what it terms a "critical zone" which it compares to a border crossing and where, it argues, "special Fourth‑Amendment considerations apply." (Brief of Appellee at 17–18.) The government submits that "once a passenger enters a secured boarding area, he relinquishes any right to leave without being searched if a security officer's suspicions are aroused." (Brief of Appellee at 16.) The cases the government cites come primarily from the Fifth Circuit which does appear to have adopted a view of airports as similar to border crossings and qualitatively different from the home or the street for Fourth Amendment purposes. *See, e. g., United States v. Cyzewski,* 484 F.2d 509, 511 (5th Cir. 1973), *petition for cert. dismissed,* 415 U.S. 902, 94 S.Ct. 936, 39 L.Ed.2d 459 (1974); *United States v. Skipwith,* 482 F.2d 1272, 1276–77 (5th Cir. 1973); *United States v. Legato,* 480 F.2d 408, 411 (5th Cir.), *cert denied,* 414 U.S. 979, 94 S.Ct. 295, 38 L.Ed.2d 223 (1973); *United States v. Moreno,* 475 F.2d 44, 51 (5th Cir.), *cert. denied,* 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76 (1973).

■ While there is authority from this circuit to support the government's view of airports generally,[1] we cannot accept the government's argument that a passenger in a secured boarding area may not, as a general proposition, leave the area rather than submit to additional searches. Such a view runs contrary to the rationale of *United States v. Davis,* 482 F.2d 893 (9th Cir. 1973). In that case, we held that the justification for warrantless screening searches is the implied consent of the passenger. "[A]s a matter of constitutional law," we stated in *Davis,* "a prospective passenger has a choice: he may submit to a search of his person and immediate possessions as a condition to boarding; or he may turn around and leave." 482 F.2d at 913. *Davis* does not state specifically that the consent to additional searches after a preliminary screening may be revoked if a passenger agrees not to board the plane. The above-quoted portion of *Davis* strongly indicates, however, that a party may revoke his consent to be searched any time prior to boarding the plane, even when he has passed beyond the initial screening point, if he agrees to leave the boarding area. Other decisions of this court have also recognized that a passenger always maintains the option of leaving. *See, e. g., United States v. Miner,* 484 F.2d 1075 (9th Cir. 1973); *United States v. Moore,* 483 F.2d 1361 (9th Cir. 1973). We must therefore reject the government's view of its power to search within the boarding area as too sweeping. Since the undisputed evidence indicates that appellant wished to leave the boarding area, the trial judge erred in finding the search reasonable under the general doctrine of implied consent.

■ We think, however, that the search was reasonable under the principles enunciated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry,* as does this case, involved a necessarily swift action predicated upon on-the-spot observations of a law enforcement officer which could not be "subjected to the warrant procedure." *Id.* at 20, 88 S.Ct. 1868. *Terry* held that searches arising under such circumstances must be tested by the Fourth Amendment's general proscription against *unreasonable* searches and seizures. *Id.* In assessing the unreasonableness of the search at issue, the Supreme Court in *Terry* first identified the governmental interests which allegedly justified the official intrusion upon the constitutionally protected interests of the private citizen. *Id.* at 23, 88 S.Ct. 1868. The Court then balanced the governmental interests identified against the invasion which the search entailed. *Id.* at 24–26, 88 S.Ct. 1868. In performing the balancing of interest and invasion, the Court applied an objective standard:

"[W]ould the facts available to the officer at the moment of the seizure or the

1. *United States v. Doran,* 482 F.2d 929, 931 n. 1 (9th Cir. 1973).

search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22, 88 S.Ct. at 1880.

Were *Terry* to be confined only to street encounters, these principles would be inapposite to this case. But these principles have not been confined merely to street encounters. They have been applied in other contexts, among them airports. *See, e. g., United States v. Fern,* 484 F.2d 666 (7th Cir. 1973); *United States v. Bell,* 464 F.2d 667 (2d Cir.), *cert. denied,* 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972); *United States v. Epperson,* 454 F.2d 769 (4th Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972); *United States v. Lindsey,* 451 F.2d 701 (3d Cir. 1971). In this context, many courts have emphasized that *Terry* permits an officer to conduct a search of a dangerous person not only for his own protection but also for the protection of others nearby.[2] *See, e. g., United States v. Bell, supra,* 464 F.2d at 673; *United States v. Epperson, supra,* 454 F.2d at 772.

Applying these principles to the facts of this case, we first consider the nature and extent of the governmental interest involved. The government here had more than a general interest in detecting and preventing crime. *Terry,* 392 U.S. at 22–23, 88 S.Ct. 1868. From the moment he passed through the security inspection point, appellant acted in a highly suspicious manner. His awkward attempt to conceal a rectangular bulge in the front of his trousers, in light of a recently received anonymous bomb threat, naturally attracted the interest of the security officers in the area. His withdrawal to the restroom where he spent fifteen minutes inside a stall, during which time "cracking" noises were heard, coupled with the fact that when he emerged from the stall the bulge in his trousers was gone

and he was carrying his suitcase normally, caused the officers to entertain a reasonable fear that the suspicious bulge had been transferred from appellant's pocket to his suitcase. That appellant thereafter nervously watched the security officers while he waited in the boarding line did nothing to dispel the officers' worries. These facts make it clear that the officers were justified in believing that appellant might be carrying a bomb in his suitcase and that appellant was dangerous to the officers and others.

Our examination of the government's interest in searching appellant's suitcase does not end here, however. We take judicial notice of the fact that within the eighteen month period immediately preceding the episode with which we are concerned, there were three major bombings at airport facilities in this country.[3] In addition, we note that two further bombings occurred within the four month period immediately following the incident at issue here,[4] the most serious being at LaGuardia Airport in New York City on December 29, 1975, in which 11 persons were killed and approximately 75 others were injured.[5] Acting against this backdrop, we find that the security officers had an immediate and compelling interest in taking steps to assure themselves that appellant did not detonate an explosive in the air terminal.

Having found that a legitimate and compelling governmental interest was involved, let us balance that interest against the invasion which the search entailed. The security officers searched appellant's suitcase. We find such a search perfectly reasonable in light of the threat appellant imposed. In *Terry,* the officer feared the appellant and his cohorts were planning an armed robbery, and therefore the officer frisked for handguns. Under the circumstances, he

---

2. *Terry v. Ohio,* 392 U.S. at 24, 26, 29, 30, 88 S.Ct. 1868.

3. John F. Kennedy International Airport, New York, May 1, 1974; Los Angeles International Airport, Los Angeles, California, August 6, 1974; and Logan International Airport, Boston, Massachusetts, August 16, 1974.

4. Miami International Airport, Miami, Florida, October 17, 1975; and LaGuardia International Airport, New York, December 29, 1975.

5. New York Times, December 31, 1975, at 1, col. 5.

acted reasonably. As the Supreme Court observed:

> "[I]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881.

In the instant case, the officers had strong reasons to suspect that the bulge in appellant's pocket had been transferred to the suitcase, and rationally inferred from their observations of appellant that the suitcase might contain an explosive. In light of these facts, the officers opened the suitcase. We hold that such a search was a necessary measure in determining whether appellant was in fact carrying an explosive and was a necessary measure in neutralizing his threat of physical harm. We hold that the search was limited to that which was necessary for the discovery of the explosives. Given these facts, that an immediate and compelling governmental interest justified a search that was carefully restricted "to what was appropriate to the discovery of the particular [item sought]," *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, we can reach no other conclusion but that the search of appellant's suitcase was reasonable.

This conclusion is not at odds with this court's decision in *United States v. Moore, supra.* One obvious difference between this case and *Moore* is that there was no bomb threat in *Moore* precipitating a need for rapid police action. Moreover, there was no indication in *Moore* that the suspect was either dangerous or engaged in some type of criminal activity. Rather, the facts of that case indicate that the officers searched an individual who was suspicious only because he appeared to be under the influence of alcohol or drugs and that the search at its inception was aimed toward discovery of contraband and not dangerous weapons.

The court found that the officers lacked "sufficient trustworthy information 'to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" 483 F.2d at 1364. To read *Moore* as preventing the search instigated in this case would be "a rigid and unthinking application of the exclusionary rule, in futile protest against [a practice] which it can never be used effectively to control." *Terry*, 392 U.S. at 15, 88 S.Ct. at 1876. Such a reading of *Moore* would make it the very evil condemned by the United States Supreme Court in *Terry*: a judicial opinion pretending to comprehend the protean variety of the street encounter. *Id.* We hold that *Moore* does not prevent us from following the admonition of *Terry* and deciding this case on its own facts. *Terry*, 392 U.S. at 15 and 30, 88 S.Ct. 1868. Given those facts, we hold that the intrusion into the suitcase was proper and reasonable.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The majority's understandable concern over recent airport bombings cannot justify an abridgement of the Fourth Amendment, because "[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be abandoned." *Home Building & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 483, 54 S.Ct. 231, 256, 78 L.Ed. 413 (1933) (Sutherland, J., dissenting).

None of the cases relied on by the majority involved a defendant who indicated any desire to leave the boarding area of an airport.[1] The only authority that appears to be squarely in point is *United States v. Moore*, 483 F.2d 1361 (9th Cir. 1973), and the holding in that case is directly contrary to the holding here made by the majority. In *Moore*, the defendant was discovered attempting to use obviously false identification and told he would not be allowed to

---

1. *See United States v. Fern*, 484 F.2d 666 (7th Cir. 1973); *United States v. Bell*, 464 F.2d 667 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972); *United States v. Epperson*, 454 F.2d 769 (4th Cir.), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972); *United States v. Lindsey*, 451 F.2d 701 (3d Cir. 1971). All of these cases relied heavily on the strong governmental interest in the prevention of skyjacking. Concededly, that interest is not applicable here.

board the plane. While waiting for the return of his luggage, defendant became extremely agitated, and appeared to be under the influence of drugs. Airport agents noticed that masking tape had been applied around one of his bags and over the keyholes of another. After receiving his bags the defendant left hurriedly, dropping his still refundable ticket, even though the agents followed, calling out that they had it. Eventually, the defendant in *Moore* was stopped, searched, and arrested for possession of marijuana found in his suitcase.

Our court reversed, stating:

"But even if a *Terry* 'frisk' were warranted, it could extend no further than 'a carefully limited search of the outer clothing of . . . [appellant] in an attempt to discover weapons which might be used to assault [the agents],' *Terry v. Ohio*, 392 U.S. at 30, 88 S.Ct. at 1885, *and thus could hardly include an investigation of the contents of appellant's locked suitcase.*" *Id.* at 1363. (Emphasis supplied.)

The majority's attempt to distinguish *Moore* rests on three grounds: (1) That in *Moore* there was no indication that the suspect was either dangerous or engaged in some type of criminal activity, (2) that the *Moore* search, at its inception, was aimed toward discovery of contraband and not dangerous weapons, and (3) that there was no bomb threat in *Moore* justifying a need for rapid police action. I respectfully submit that none of these alleged distinctions has any validity whatsoever.

A comparison of the facts in *Moore* with those in the present case demonstrate that *Moore* acted far more erratically than did the appellant here, yet the court characterized Moore's conduct as "no more than suspicious." *Id.* at 1363. My Brothers here describe the search in *Moore* as "aimed toward the discovery of contraband." It seems to me, however, that such a description can only be characterized as conclusion-

ary and will not prove to be a workable test for resolving these kinds of problems in the future. Finally, the majority's emphasis on the anonymous bomb threat raises a troublesome issue not fully addressed in the majority's opinion: To what extent may a search based on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), be justified on the basis of potentially exotic dangers?[2] We have obviously come a long way from the simple pat-down search contemplated by *Terry* to such an intrusive invasion of a locked piece of private luggage as is now upheld by the majority. This extension of the Supreme Court's carefully restricted *Terry* holding is justified not on any special status of airport hijack control but would apply as logically whenever an anonymous bomb threat has been received in any busy public building. The majority's disclaimer of any attempt to set a general rule does not soften its dramatic abridgement of Homburg's Fourth Amendment rights. I would reverse.

---

**2.** As the Supreme Court emphasized, "[t]he sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1967).