UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Albert CHATMAN,
Defendant-Appellant.

No. 77–1455.

United States Court of Appeals,
Ninth Circuit.

Dec. 1, 1977.

Rehearing and Rehearing En Banc
Denied Jan. 18, 1978.

William J. Bender, (argued), Seattle, Wash., for defendant-appellant.

Harry J. McCarthy, Asst. U.S. Atty., (argued), Seattle, Wash., for plaintiff-appellee.

Before MERRILL and TRASK, Circuit Judges, and TAKASUGI,* District Judge.

PER CURIAM:

The district court, sitting without a jury convicted Chatman of possession with intent to distribute heroin in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(A). We affirm.

Chatman argues that the evidence received at trial was obtained as the result of an unlawful search and seizure. We find the facts discussed below sufficient to establish probable cause to arrest Chatman, thereby making the search one incident to a valid arrest. The facts, which must be viewed in the light most favorable to the government, *United States v. Vital-Padilla*, 500 F.2d 641, 642–43 (9th Cir. 1974), are as follows:

Appellant, the day prior to his early morning arrest, had purchased an airline ticket in Seattle for a short stay in San Francisco after failing to meet two other flight reservations, both of which also provided for a short layover. The ticket was purchased with cash taken from a roll of currency. Appellant traveled alone and carried no luggage, stating he would only be in San Francisco for an hour and a half. With this information, obtained from the airline ticket agent, an agent of the Drug Enforcement Agency directed surveillance of appellant in San Francisco.

At the San Francisco Airport appellant was met by a man and driven into the city. In San Francisco he was driven to a restaurant, where, after the two had looked about, the car was parked. After again looking about the two entered the restaurant and appellant's companion made three telephone calls from a pay booth. After the two were joined by a woman, the male companion made two more telephone calls. Appellant did not eat or drink at the restaurant. The three then drove to three residences in different parts of San Francisco, two of which were located in an area known to have a high incidence of narcotics traffic. Each stop was of short duration. The manner in which the car was driven indicated a desire to avoid surveillance. U-turns were executed on three occasions, and on several occasions a block was completely squared. Appellant and his companions frequently looked out the rear window. Ultimately surveillance was lost when the car darted across two lanes of traffic. With this additional information an agent of the Drug Enforcement Agency directed that

---

* Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

appellant be interrogated on his arrival in Seattle.

Chatman left the San Francisco Airport on a Western Airlines flight at approximately 2:20 a. m. and arrived in Seattle at approximately 4:15 a. m. On his arrival he was approached for interrogation by an agent of the Drug Enforcement Agency who was accompanied by two uniformed police officers. Additional facts then came to the agent's attention. It was learned that appellant and his companion were traveling under aliases. Appellant carried no identification and seemed extremely nervous when stopped for interrogation. Appellant was then directed to an interview room. En route he repeatedly attempted to hide a bulge in his trousers pocket. In the interview room appellant was ordered to empty his pockets. He did not produce the article causing the bulge. He was directed to produce it and refused to do so. He was then directed to remove his trousers. He did so, the trousers were searched, and narcotics were discovered in the bulging pocket. It is this search that appellant challenges.

■ Appellant contends that the act of directing him to proceed to an interview room constituted an arrest and that probable cause should have existed at that time. We disagree. Founded suspicion based on the facts then known to the agent justified the interrogation, and it was not improper, in absence of protest or coercive circumstances, to arrange that it take place free from public view with its attendant embarrassment. We agree with *United States v. Salter*, 521 F.2d 1326, 1328–29 (2d Cir. 1975), where it was said:

> "We likewise see nothing wrong in Agent Fernan's asking Salter to step into the baggage room, a place more convenient for interrogation than an open platform * * *."

The same point is made in *United States v. Oates*, 560 F.2d 45, 57 (2d Cir. 1977), where *Salter* is quoted. See *United States v. Scheiblauer*, 472 F.2d 297, 299–300 (9th Cir. 1973).

■ The question presented by the appeal is whether, at the time appellant was directed to empty his pockets, there was probable cause to suppose that he was in possession of narcotics and subject to arrest. We conclude that there was. The agent, at the time of entry into the interview room, had probable cause to believe that the trip to San Francisco had been made for the purpose of clandestinely engaging in illegal business of some kind and that appellant had something in his pocket which he wished to conceal. We also conclude that the most reasonable probability under all the circumstances was that the object which he was attempting to conceal was contraband or goods the possession or concealment of which would constitute a crime. See *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Canada*, 527 F.2d 1374, 1379–80 (9th Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975).

■ When appellant entered the interview room the agent then had probable cause to place him under arrest. "Once there is probable cause for an arrest without a warrant it is immaterial that a search (without a warrant) precedes the arrest." *Busby v. United States*, 296 F.2d 328, 332 (9th Cir.), *cert. denied*, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1961). As long as probable cause to arrest exists before the search, a search substantially contemporaneous with the arrest is incident thereto. *United States v. Murray*, 492 F.2d 178, 188 (9th Cir. 1973), *cert. denied*, 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974); *accord, United States v. Jenkins*, 496 F.2d 57, 73 (2d Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975). A search of the defendant's person, as was conducted here, is clearly within the proper scope of such a search incident to a valid arrest. *United States v. Rogers*, 453 F.2d 860, 861–62 (9th Cir. 1972).

The search of Chatman was substantially contemporaneous with the arrest based on probable cause. We conclude that the district court properly denied appellant's mo-

tion to suppress the evidence obtained from that search.

Judgment affirmed.

TAKASUGI, District Judge, dissenting:

I respectfully dissent.

This case addresses difficult issues relating to various stages of police activity ranging from investigation through final arrest. An understanding is required of the distinctions between probable cause for arrest and founded suspicion justifying an investigatory stop.

Although it is difficult for this court to place itself in the role of police officers who are required to make decisions and take action without the benefit of quiet reflection, the Fourth Amendment requires judicial intervention when police activity compromises the right of the people to be secure from unreasonable searches and seizures. *Terry v. Ohio* condemns "judicial opinion[s] can comprehend the protean variety of the street encounter." 392 U.S. 1, 15, 88 S.Ct. 1868, 1876, 20 L.Ed.2d 889 (1967). Accordingly, search and seizure issues are to be decided on the facts of the particular case. *Id.* at 15, 30, 88 S.Ct. 1868.

*Terry* established that a police officer could stop and question a person upon less

than probable cause for arrest. Such an investigatory "stop" is clearly within the Fourth Amendment language governing "seizures." *Id.* at 16. The Court balanced the government's interest in crime prevention against the constitutionally protected interests of the private citizen and found that, to justify the intrusion of a "stop," the police officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 20–21, 88 S.Ct. at 1880.[1]

Upon making an investigatory stop upon founded suspicion, an officer may, under certain circumstances,[2] "frisk" the suspects, but being based upon less than probable cause, the frisk must be limited in scope to an outer clothing pat-down for weapons. Thus, a *Terry* frisk is "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion." 392 U.S. at 26, 88 S.Ct. at 1882.[3]

Once the *Terry* stop has been effected, it is of course possible that new facts will be presented to the investigating officer sufficient to create probable cause for arrest and search. See *United States v. Solomon*, 528

---

1. The "founded suspicion" that must exist to justify an investigatory stop is explained in the Ninth Circuit as follows:

    "Granting that the constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause, there is a difference between that 'cause' which will justify informal detention short of arrest and the probable cause standard required to justify that kind of custody traditionally denominated an arrest. . . . [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary and harassing." *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966). *See also, United States v. Scheiblauer*, 472 F.2d 297, 300 (9th Cir. 1973).

2. Even a limited weapons frisk is not automatic after a valid *Terry* stop. The officer must have some articulable basis to believe the person stopped is presently and dangerously armed.

3. This circuit's recognition that a *Terry* frisk or search is less extensive than a full search incident to arrest is found in *United States v. Homburg*, 546 F.2d 1350 (9th Cir. 1976). In *Homburg* a search of the defendant's suitcase was allowed where there had been a bomb threat at the airport at which the defendant was stopped, the defendant appeared nervous and had a bulging object in his pocket which was apparently transferred to his suitcase. This court emphasized however, that these facts only warranted a search "limited to that which was necessary for the discovery of the explosives." *Id.* at 1354. It can be seen, therefore, that the Fourth Amendment will tolerate limited weapons searches of the person or property upon less than probable cause where the governmental interest in crime prevention outweighs the serious intrusion.

F.2d 88, 91 (9th Cir. 1975). There is a crucial distinction to be made, however, between probable cause naturally developing during the course of the *Terry* questioning and probable cause being bootstrapped into existence by evidence discovered in a search exceeding the bounds permitted by *Terry.* As stated by the Supreme Court in *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1967):

> "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification."

It is only after a police officer has probable cause for arrest that he or she may exceed the strictly limited frisk allowed by *Terry* and fully search the suspect. See *United States v. Robinson,* 414 U.S. 218, 227, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).[4]

## I.

### FACTS

Although *de novo* review of the factual basis for trial court decisions is uncommon, cases involving a determination of founded suspicion and/or probable cause frequently involve a fairly complete review of the facts. See, e. g., *United States v. Homburg, supra,* n. 3, 546 F.2d, at 1351–52; *United States v. Canada,* 527 F.2d 1374, 1376–77 (9th Cir. 1975); and the majority opinion in the instant case. The salient facts in this case are:

1. Appellant bought a round-trip airline ticket from Seattle to San Francisco which provided for a short layover in San Francisco. Several other reservations were made but not acted upon. The ticket was purchased with cash from a roll of currency. The appellant traveled alone and with no luggage.

2. Appellant was met in San Francisco by a man. They drove to a restaurant, where they did not eat or drink, but made phone calls from a pay phone. They were joined by a woman who left with them.

The three drove to several residences in San Francisco, stopping briefly and then leaving. Two of the residences were located in high-drug areas.

As appellant traveled about the city, the car was seen to make several U-turns and circle blocks on occasion. Appellant and his male companion were seen to look out the rear window as they traveled.

3. Upon his return to Seattle with a female companion, appellant was questioned by Drug Enforcement Administration agents who learned that the two were traveling under aliases. Appellant seemed nervous when stopped by the agents.

En route to an interrogation room, appellant tried to hide a bulge in his trousers pocket.

## II.

### ANALYSIS

From the foregoing, the majority concludes that the arresting officer, at the time of entry into the interview room, had probable cause to believe that the trip to San Francisco had been made for the purpose of engaging in illegal business of some kind. This conclusion is reached by the majority without detailed analysis of the situation as it evolved from the time of the appellant's first encounter with the agents upon returning from San Francisco to Seattle.

At the time of appellant's deplaning in Seattle, there did not exist probable cause for his arrest. This is conceded by the Government.[5] There is also no indication in the majority opinion that probable cause existed at that time, and the trial court found, in its conclusions of law, that:

> "At the time Agent Snyder first contacted defendant upon the latter's debarkation at the airport in Seattle, Agent Sny-

---

4. A discussion of the extent of a warrantless search based upon probable cause to arrest appears unnecessary in the light of the facts before this court.

5. The Government merely argues that the defendant's purchase of the ticket and his activities in San Francisco gave rise to a "*founded suspicion* [upon which] to approach appellant and talk to him. . . ." Respondent's Brief at 14 (emphasis added).

der had reason to believe that defendant had made a trip to San Francisco in order to purchase narcotics. At that time Agent Snyder had grounds *to detain defendant for questioning.*" (Emphasis added)

The fact that founded suspicion and not probable cause existed at that time is important for two reasons. First, it means that any search made under those circumstances would have to be limited to one for weapons. Second, it means that an arrest or full search is not permissible without additional facts which, taken together with the previously ascertained facts, establish probable cause. The additional facts which came to the agents' attention are:

(1) That appellant and companion were traveling under aliases;

(2) Appellant appeared nervous; and

(3) Appellant tried to hide a bulge in the pocket of his trousers as he was taken to the office of the agents.

Do these facts create probable cause? In the case of *United States v. Moore*, 483 F.2d 1361 (9th Cir. 1973), it was held that probable cause did not exist where the defendant was stopped at an airport and was found to be traveling under an alias (he presented identification which the officers knew to be false), after which he became extremely agitated, "sweating, trembling, [with] eyes dilated and 'glassy,' [and] speech slurred." *Id.* at 1362–63. In *Moore* the defendant was traveling with luggage that had masking tape over the keyhole, and he tried to leave the airport in such haste and confusion that he dropped his still refundable ticket and did not stop when the customs agents called to him that they had it. *Id.* at 1363. Although these factors appear to be at least as incriminating as those in the instant case, this court held that "[a]ppellant's conduct was no more than suspicious" and that probable cause did not exist. *Id.* The test for probable cause set forth in *Moore* is:

". . 'whether at that moment the facts and circumstances within . . .. [the agents'] knowledge and of which

they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' *United States v. Selby*, 407 F.2d 241, 242–243 (9th Cir. 1969), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)." *Id.*

This court also pointed out in *Moore* that:

"Probable cause is lacking if the circumstances relied on are 'susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities.' *United States v. Kandlis*, 432 F.2d 132, 136 (9th Cir. 1970), *quoting United States v. Selby, supra*, 407 F.2d at 243." *Id.*

The appellant's actions in the instant case are certainly susceptible to innocent interpretations.

The exact point at which probable cause arose is also called into question by the majority opinion. At one point it states that the arrest did not take place when the appellant was met by the agents in Seattle. It is then asserted that at that time "[f]ounded suspicion based on the facts then known to the agent justified the interrogating and it was not improper, in absence of protest or coercive circumstances, to arrange that it take place free from public view with its attendant embarrassment. [Citation omitted]." This statement indicates that at the time the agents asked the appellant and his companion to accompany them to the office they had only founded suspicion and were merely trying to carry out *Terry* type questioning in a more secluded place. The agents were aware at that point that the appellant was using an alias and that he appeared nervous, but probable cause did not exist. The majority additionally states, however, that "the agent at the time of entry into the interview room, *had probable cause* to believe that the trip to San Francisco had been made for the purpose of clandestinely engaging in illegal business *of some kind.* . . ." (Emphases added).[6]

---

6. If probable cause emerged at this point, i. e., upon entry into the interview room, the ques-

tion is—probable cause to arrest for *what crime?* While at one point the majority flatly

The majority appears to be saying that it was during the walk to the interview room, when the appellant was apparently trying to conceal something in his pocket, that probable cause came into existence. This is inconsistent with the trial court's conclusion that probable cause existed because, *inter alia*, the appellant failed to remove the object from his pocket,[7] whereas the majority finds that probable cause existed upon reaching the room and that therefore the search conducted by directing the appellant to empty his pockets was proper.

This court in *Cipres v. United States*, 343 F.2d 95 (9th Cir. 1965), *cert. denied*, 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966) explained under what conditions a warrantless search may precede the arrest. The *Cipres* case held that if probable cause exists at the time of the search and it is "substantially contemporaneous" with the arrest, the search may not violate the Fourth Amendment. Even assuming *arguendo* that probable cause for arrest existed at the time the appellant here was ordered to empty his pockets, this court in *Cipres* recognized that a search prior to arrest must be based upon "exigent circumstances." 343 F.2d 98, n. 9. "Thus," it was said in *Cipres*, "the inquiry would be whether at the moment the bags were searched the officers had reasonably trustworthy information of facts sufficient to warrant a prudent man in believing that Cipres was committing an offense [the *Beck* test for probable cause], *and that the removal of the evidence was threatened.*" *Id.* at 98–99 (emphasis added; footnotes omitted).

To require otherwise might encourage a further beclouding of the distinctions between the various degrees to permissible police intrusions and increase the possibility that evidence disclosed by a search would be considered as part of the justification for a subsequent arrest.[8] *Cipres* should be followed.

### III.

### CONCLUSION

This case is not one involving mere technical details about the order in which steps of a police investigation occur. There is presented here the problem of maintaining procedural rules that allow effective police activity while preventing situations such as this, in which the police search an individual, with less than probable cause, for the purpose of discovering evidence which will thereafter form the basis for the arrest. Here the police made an initial *Terry* stop, but did not exercise their privilege of frisking the appellant for weapons. The agents apparently had no fear for their safety, since they allowed the appellant to walk with them some distance with a visible bulge in his pocket and even instructed him to remove the object.[9]

Having less than probable cause, the agents took the appellant to an interview room, but claim that probable cause arose on the way there. Yet upon reaching the room they did not tell the appellant that he

states that there "was probable cause to suppose that he was in possession of narcotics", two sentences later they find probable cause only to believe that the trip was for the purpose of "illegal business of some kind." Neither conclusion is supported by the facts of this case. I do not believe an exhaustive recitation of examples is necessary to establish that the conduct of the defendant and the circumstances attendant thereto were consistent with a myriad of activities.

7.  The trial court concluded:
    "Because of the fact that the questioning of the defendant and his companion revealed that both of them were traveling under assumed names, that defendant appeared extremely nervous; that defendant was seen to be trying to conceal a bulge in his right front trouser pocket; *and because defendant failed to remove from that pocket the object that was causing that bulge,* Agent Snyder then had probable cause to arrest defendant." (emphasis added).

8.  This court in *Cipres* also expressly pointed out a basic tenet of search and seizure law:
    "Of course, nothing disclosed by the search could be considered to justify the arrest. [citation omitted]." at 99.

9.  Perhaps their fear was allayed by the knowledge that defendant had probably just passed through an airport weapons security check.

was under arrest. While a full search prior to arrest may be justified as incident to a substantially contemporaneous arrest without a warrant if there is any danger of imminent destruction or loss of evidence (*Cipres v. United States, supra*), no such danger was shown to exist here.

Additionally, the fact that the agents notified the appellant that he was under arrest only after the discovery of the heroin may indicate that they did not feel there were grounds to arrest him until that time. The discovery of the heroin could not justify either the search or the arrest. To support the majority's conclusions, probable cause need have existed because of the combination of a series of the appellant's activities, all with possible innocent interpretations. It appears that the agents knew that probable cause was doubtful and, therefore, did not arrest the appellant until they had forcibly obtained the incriminating evidence. The agents would surely have released the appellant if the object in his pocket had turned out to be innocuous. The majority, therefore, is inviting police searches for evidence upon which to make subsequent arrests when there exists no more than founded suspicion. Such police activity clearly violates the Fourth Amendment.

I would reverse.