UNITED STATES of America, Appellee,

v.

Stanley SULLIVAN, Jr., Defendant, Appellant.

No. 82–1796.

United States Court of Appeals, First Circuit.

Argued March 10, 1983.

Decided June 23, 1983.

Rehearing and Rehearing En Banc Denied Aug. 25, 1983.

J. Hilary Billings, Bangor, Me., with whom Stern & Goldsmith, Bangor, Me., was on brief, for appellant.

Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and CAFFREY,* District Judge.

* Of the District of Massachusetts, sitting by des-

CAFFREY, District Judge.

This case is before us on appeal from the denial of a motion to suppress. Appellant waived a jury, was tried and found guilty by the District Court. *United States v. Sullivan,* 544 F.Supp. 701 (D.Me.1982). The question raised on appeal is whether appellant's rights under the fourth and fourteenth amendments were violated when employees of Delta Airlines, aided by law enforcement agents, made warrantless searches of a package presented by appellant to Delta Airlines for air shipment. The District Court held that the searches did not violate constitutional requirements and our review of the record reveals no error. We affirm.

*Facts*

The facts as found by the District Court are as follows.

On November 17, 1981, Delta Airlines employees Davis and Johnson were on duty at the Delta Airfreight counter at the Bangor International Airport (BIA) in Bangor, Maine. Davis was waiting on airfreight customers shortly prior to the scheduled departure of Delta flight 323 when the appellant entered the airfreight-customer waiting area with a package. Johnson, who was engaged in overseeing airfreight counter operations, observed the appellant as appellant waited to present his package. Johnson noticed that appellant appeared a little bit nervous, walking from one side of the waiting area to the other while Davis was waiting on another customer. When appellant approached the counter to present his package, Davis explained to him the difference between regular Delta airfreight service and Delta Dash service. Davis told appellant that Delta Dash insured special handling with guaranteed, scheduled delivery at a substantially greater cost than the cost of regular airfreight, and that Delta Dash customarily was used to transport items such as priority documents, machine parts, and small pets. Appellant chose the Delta Dash service, naming "Sentry Associates" as the consignor, "Prince D. Beach" of "Trilby, Fla." as the consignee, and the

ignation.

contents as "watches." The destination of the shipment was shown as "Tampa, Florida." Davis recorded this information on the Delta Dash airbill, which was signed by "Stan Sullivan," and Davis gave appellant a copy. The wrapped package was slightly smaller than a shoe box and was very light. It bore the handwritten inscription "Do not open until Christmas."

Davis' suspicions were aroused, and after appellant departed, Davis brought the package to Johnson's attention. Upon examining the pertinent paperwork, Johnson too, was suspicious for the following reasons. There was no business address given for the sender. The shipping charge was paid in cash, which Johnson considered unusual for a business shipment. Watches had never before, to Johnson's knowledge, been shipped by either Delta Dash or by regular airfreight service. The package was marked "Do not open until Christmas" and yet it was being sent on November 17, by guaranteed, same-day delivery service. Finally, the District Court found that Johnson was particularly concerned about the contents of the package due to a rumored report of an incident, two days earlier, involving a recently released Bangor Mental Health Institute patient who had appeared at the airport and made numerous inquiries of airline personnel concerning flight departures and shipping.

Due to his suspicions, Johnson consulted the telephone book and directory assistance for the telephone number and address of "Sentry Associates." Finding none, he summoned Bangor Police Lt. Medford Seabrease who was in charge of the BIA security detail. Johnson informed Seabrease that he suspected the package did not contain watches, and he requested Seabrease to put it through the airport x-ray scanner used for passenger luggage. Seabrease did as he was requested and advised Johnson that the package did not contain watch parts. Johnson himself then subjected the package to a Geiger-count reading in his office and in the presence of Seabrease, with negative results.

Based on the testimony at trial the District Court found the following two facts. Johnson believed there might be an explosive in the package, and Seabrease believed it might contain either contraband or a plastic explosive with a nonmetallic detonation device, or a metallic detonation device so small as to be undetectable by the available x-ray equipment. Seabrease at this time attempted to contact a member of the Bangor Police Department's two-man bomb squad for assistance, but the squad was unavailable. The District Court found that both Johnson and Seabrease independently decided the package would have to be opened, and that Seabrease, with the permission and assistance of Johnson, performed the actual opening. Inside was a dark blue sock, with traces of a white, powder-like substance upon its outer surface. Contained within the sock was a small transparent bag of what appeared to be the same white powder. Seabrease promptly requested the assistance of police personnel more familiar with what Seabrease suspected was an illegal substance. After discussion with Johnson and Seabrease, Detective Welch of the Bangor Police Department took the bag with its contents to a chemical expert, who determined that the powder was cocaine hydrochloride and weighed 28.35 grams.

On the basis of the District Court's findings we affirm its ruling that Delta Airlines had an independent right, in light of the circumstances, to conduct the x-ray scan and Geiger-count examination, and that the technical assistance of Seabrease was enlisted directly and exclusively in aid of this legitimate, safety-related, private airline purpose. See *United States v. Edwards*, 602 F.2d 458, 463 (1st Cir.1979).

*The Opening of the Package*

By the time the opening of the package occurred, it was found by the District Court that Seabrease and Johnson were in possession of the following facts: 1) the sender appeared nervous; 2) the use of Delta airfreight service for the shipment of watches was unusual; 3) the use of Delta Dash guaranteed, same-day delivery service for a

mid-November shipment not to be opened until Christmas appeared highly incongruous; 4) there was no telephone listing for the sender "Sentry Associates;" 5) cash payment of the shipping charge by a business shipper was unusual; 6) Lt. Seabrease was the only person immediately available having any expertise in dealing with explosives; 7) there were no suitable facilities available for the safe storage or removal of explosives; 8) the contents of the package had been incorrectly described by the sender and it in fact contained no watches, and; 9) the x-ray scan had not ruled out absolutely the presence of explosives.

The District Court found that Seabrease was by now suspicious of the contents of the package, having recognized that it might contain contraband or explosives. Seabrease was the first to mention the opening of the package and took the lead in doing so. Upon Seabrease's inquiry to Johnson whether the airline would object to the opening of the package, Johnson stated that the package would have to be opened in any event.

The District Court found that Seabrease had a reasonable belief that explosives might have been present in appellant's package and further found that this exigent circumstance justified Seabrease in opening the package without first procuring a search warrant. Under similar circumstances in *United States v. Homburg,* 546 F.2d 1350 (9th Cir.1977), the court upheld a search, not as a routine pre-boarding search, but as a reasonable public safety inspection, on the authority of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Accord, United States v. Legato,* 480 F.2d 408 (5th Cir.1973). Even in the absence of a bomb threat or tip, the Court of Appeals for the Fourth Circuit has upheld the hand search of a briefcase that appeared black under an x-ray scan. *United States v. DeAngelo,* 584 F.2d 46, 47 (4th Cir.), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1979).

Appellant contends that the finding of exigent circumstances based on the testimony at trial is error because the District Court ignored the weight of the testimony in finding Johnson's and Seabrease's explanation for their concerns reasonable. This contention is not tenable on all the evidence, which establishes that the District Court's findings of fact relevant as to probable cause and exigent circumstances are not clearly erroneous. *We accordingly affirm.*