**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

TRAVIS POPE,
            *Defendant-Appellant.*

No. 11-10311

D.C. No.
2:09-cr-00387-
EJG-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Edward J. Garcia, Senior District Judge, Presiding

Argued and Submitted
March 15, 2012—San Francisco, California

Filed July 17, 2012

Before: J. Clifford Wallace, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

8207

## COUNSEL

John Balazs, Sacramento, California, Daniel Taylor, Certified Law Student, University of the Pacific McGeorge School of Law, Sacramento, California, for defendant-appellant Travis Pope.

Benjamin B. Wagner, United States Attorney, Sacramento, California, Justin L. Lee, Special Assistant United States Attorney, Sacramento, California, for appellee the United States of America.

## OPINION

BEA, Circuit Judge:

Defendant-appellant Travis Pope appeals from the denial of his motion to suppress evidence of his possession of marijuana. Pope argues that an officer's two separate commands directing him to empty his pockets each constituted illegal

searches in violation of the Fourth Amendment to the United
States Constitution. These arguments fail.

Because Pope did not comply with the officer's first com-
mand, the command did not cause an intrusion upon Pope's
reasonable expectation of privacy in the contents of his pock-
ets. Thus, it was not a search. The officer's second command,
with which Pope complied, was a search within the meaning
of the Fourth Amendment. However, the search was not ille-
gal because it was supported by probable cause and because
exigent circumstances justified searching Pope without a war-
rant. Accordingly, we affirm.

## I.    Factual and Procedural Background

The material facts of this case are undisputed and were cap-
tured on a video recording of the incident. On August 16,
2009, Forest Law Enforcement Officer Ken Marcus drove to
a large gathering of people in the El Dorado National Forest
after receiving reports of loud music and use of a public
address system. He was the only officer at the scene.

Pope approached Officer Marcus after Officer Marcus had
placed one of Pope's passengers in the back of the officer's
patrol car. From his observation of Pope, Officer Marcus
almost immediately formed the belief that Pope was under the
influence of marijuana. Officer Marcus asked Pope if he had
been smoking marijuana, and Pope admitted that he had. Offi-
cer Marcus then asked Pope if he had any marijuana "on
him." Pope denied this. Officer Marcus then ordered Pope to
*empty his pockets*. Although Pope's hands were close to his
pockets, he made no move to empty them. Officer Marcus
asked him again if he had any marijuana in his possession.
This time, Pope admitted that he did. Officer Marcus then
directed Pope to *place the marijuana on the hood of the patrol
car*. In response, Pope produced marijuana from his pockets
and placed it on the hood of the patrol car. Officer Marcus

cited Pope for possession of marijuana and allowed him to leave.

The government filed an information charging Pope with one count of misdemeanor possession of marijuana in violation of 21 U.S.C. § 844(a). Before the magistrate judge, Pope moved to suppress evidence of the marijuana he had produced from his pocket, arguing that it was the product of an illegal search. The magistrate judge denied Pope's motion on the grounds that the first command for Pope to empty his pockets was not a search and that the second command (coupled with Pope's compliance) was a search but that it did not violate the Fourth Amendment because it was a search incident to arrest. Pope then pleaded guilty but reserved his right to appeal the denial of his suppression motion to the district court. The district court affirmed the magistrate court's denial of Pope's motion to suppress, but on slightly different grounds, holding that the first command was a search but that it was supported by probable cause and made incident to arrest. Pope appealed the district court's order.

## II.   Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. "We review the district court's denial of [defendant's] motion to suppress evidence *de novo*; the district court's factual findings are reviewed for clear error." *United States v. Willis*, 431 F.3d 709, 713 n.3 (9th Cir. 2005). "We may affirm on any basis supported by the record even if the district court did not rely on that basis." *United States v. Washington*, 969 F.2d 752, 755 (9th Cir. 1992) (citation and internal quotation marks omitted).

## III.   Analysis

The United States Supreme Court has recently restated "the basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se*

unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation and internal quotation marks omitted); *see* U.S. Const. amend. IV.

Pope raises several issues on appeal that center on Officer Marcus' initial and second commands for Pope to empty his pockets. Pope first argues that the initial command, by itself, was a Fourth Amendment search and illegal unless executed with a warrant or under an exception to the warrant requirement. Pope then argues that the district court erred in holding that this search was conducted with probable cause. Last, Pope argues that the warrantless search of his person, whether based on the initial or subsequent command, does not qualify for the search-incident-to-lawful-arrest exception because there was no arrest.

The government contends that the initial command for Pope to empty his pockets was not a search because the command produced nothing; there was no infringement upon Pope's reasonable expectations of privacy. We agree. Next, the government concedes that the second command was a search, but argues it is excepted from the warrant requirement as a search incident to arrest. We agree that it is excepted from the warrant requirement but on the different ground that probable cause to arrest and exigent circumstances justified the search.

We address each of Officer Marcus' commands in turn to determine whether a Fourth Amendment search occurred and, if so, whether an exception to the warrant requirement applies.

**A.    Officer Marcus' initial command**

**[1]** A Fourth Amendment "search" occurs when the government infringes on a subjective expectation of privacy that

society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring). The existence of a "search" is not dependent upon "the presence or absence of a physical intrusion into any given enclosure." *Id.* at 353 (majority opinion); *cf. United States v. Jones*, 132 S. Ct. 945, 949-50 (2012) (holding GPS tracking of car was unconstitutional, comparing the "property-based" or trespass-based approach with the *Katz* "reasonable expectation of privacy" approach to determine whether a Fourth Amendment search has occurred, and holding that either may lead to the conclusion that a search occurred).

[2] The government concedes that Pope had a reasonable expectation of privacy in the contents of his pockets. The question, however, is whether a command to empty one's pockets intrudes on that reasonable expectation of privacy when the suspect does not comply with the command. We conclude it does not.[1] Pope did nothing to comply with Officer Marcus' initial command and thus nothing that was not already exposed to the public was revealed. Neither Officer Marcus nor his verbal command produced any invasion of privacy, whether based on societal expectations or physical trespass. Therefore, Officer Marcus' initial command, without compliance, did not effect a search under the Fourth Amendment. *Cf. California v. Hodari D.*, 499 U.S. 621, 629 (1991)

---

[1]The district court was less than clear in its holding that the initial command was a "search which was supported by probable cause and incident to arrest." The district court stated that Pope "makes much ado about the initial order to empty his pockets," and that "it is clear . . . that [Pope's] reasonable expectation of privacy evaporated once he admitted that he was in possession of marijuana. That fact, combined with the officer's observations of defendant's intoxicated state, created probable cause . . . ." Pope correctly points out that this language shows that the district court erroneously relied on the statements that came *after* the officer first told Pope that he needed to empty his pockets. This distinction is irrelevant, however, as we affirm on the alternative ground supported by the record that the initial command did not effect a search. *See Washington*, 969 F.2d at 755.

(holding no Fourth Amendment seizure occurred when juvenile did not comply with officer's command to halt).

While this case presents a question of first impression, we conclude our decision in *United States v. Winsor*, 846 F.2d 1569 (1988) (en banc) is instructive. In *Winsor*, we held that police effected a search when they gained visual entry into a hotel room through a door that was opened at their command. *Id.* at 1573. The suspect in *Winsor* did not open his door voluntarily, but rather "in response to a claim of lawful authority." *Id.* Also, the fact that the police did not physically enter the room was irrelevant; visual access to a private space was sufficient to consummate the search. *Id.* at 1572.

**[3]** *Winsor* supports the proposition that a Fourth Amendment search occurs when police command a person to reveal something in which he would otherwise have a reasonable expectation of privacy *and* that thing or that area is revealed as a result of the command. Had Winsor refused to open the door, the police would not have gained access to his room by the command alone. They would have had to do something more to execute the search. In the present case, Officer Marcus' first command for Pope to empty his pockets had the potential to become a search. However, unlike the suspect in *Winsor*, Pope did not comply with Officer Marcus' command. That is, Officer Marcus' first attempt to discover the contents of Pope's pockets failed.

Pope argues, however, that Officer Marcus' initial command constituted a search regardless of whether he complied with the order. He relies on *United States v. Chatman*, 573 F.2d 565 (9th Cir. 1997). We are not persuaded.

In *Chatman*, law enforcement officers stopped a suspected drug trafficker in the Seattle airport and directed him to an interview room for interrogation. *Id.* at 566-67. En route to the interview room, Chatman repeatedly attempted to hide a bulge in his pants' pocket. *Id.* at 567. The officers ordered

Chatman to empty his pockets and, when he failed to produce the item causing the bulge, they searched his pants. *Id.* The officers discovered narcotics in the bulging pocket. *Id.*

On appeal, we framed the issue as "whether, at the time [Chatman] was directed to empty his pockets, there was probable cause." *Id.* By framing the issue in this way, the court implied that the search began with the officers' command to Chatman to empty his pockets. But whether the search occurred as soon as the officers commanded Chatman to empty his pockets or when the officers searched the pockets themselves was not relevant to that case. Instead, the court found that probable cause to arrest existed prior to entering the interview room and that the subsequent search of the defendant was valid because it was substantially contemporaneous with the arrest. *Id.* Under the court's analysis, the precise moment that the search began was irrelevant so long as it occurred after the defendant entered the interview room and was substantially contemporaneous with the arrest. Here, in contrast, the government concedes that probable cause to arrest Pope did not exist prior to the initial command, but that it did arise prior to the second command. Therefore, unlike *Chatman*, it matters in this case whether Officer Marcus' initial command effected a Fourth Amendment search. *Chatman* does not aid us in this inquiry because the *Chatman* court did not analyze or decide the issue whether the command by itself, before compliance, constituted a search.

Because we conclude that Officer Marcus' initial command for Pope to empty his pockets did not effect a search,[2] there

---

[2]The Sixth Circuit has stated that "[s]everal cases confirm that words alone may amount to a search" and that "an officer may not sidestep the requirements of the Fourth Amendment by directing a suspect to 'empty your pockets,' then disclaim any constitutional violation on the ground that he verbally directed the suspect without touching or in any way searching him." *United States v. Street*, 614 F.3d 228, 233-34 (6th Cir. 2010) (citations omitted). However, none of the cases cited by the Sixth

is no need to address whether it was conducted without probable cause or is excepted from the warrant requirement as a search incident to arrest. We now turn to the second command.

## B.    Officer Marcus' second command

**[4]** The government concedes that Officer Marcus' second command (for Pope to place the marijuana on the hood of the patrol car) effected a Fourth Amendment search. The magistrate judge held that the second command was a permissible search under the search-incident-to-lawful-arrest exception. The district court affirmed, but it held that Officer Marcus' initial order "was a search which was supported by probable cause and was incident to arrest." It did not, therefore, separately analyze the second command. The district court also held that "whether [Pope] was actually arrested is irrelevant" and that "[a]t the moment [Pope] removed the marijuana from his pocket and placed it on the hood of the car, he was effectively under arrest."

The district court cited no authority for the proposition that the search-incident-to-arrest exception can apply even if the

Circuit involve "words alone" *without compliance* with those words. In each case, a government official commanded a suspect to empty his pockets or to expose an area otherwise concealed from the public, *and* the suspect complied. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2641-42 (2009) (holding that a school official's verbal order was a search where a student was ordered to pull out her bra and the elastic on her underpants so that school officials could see if pills were being hidden, and she complied); *see also United States v. Reyes*, 349 F.3d 219, 225 (5th Cir. 2003); *United States v. Dalpiaz*, 494 F.2d 374, 377 (6th Cir. 1974); *United States v. Foust*, 461 F.2d 328, 331 (7th Cir. 1972). While an officer may not sidestep the requirements of the Fourth Amendment by directing a suspect to do something that would violate its proscriptions were it done by the officer himself, *see, e.g.*, *Winsor*, 846 F.2d at 1573, words alone, not complied with, are not enough to infringe upon an individual's reasonable expectation of privacy under *Katz*.

suspect is not actually arrested. However, we may affirm on any basis supported by the record. *Washington*, 969 F.2d at 755. We affirm because the search was supported by probable cause to arrest, and because the evanescent nature of the evidence justified a limited warrantless search. *See Cupp v. Murphy*, 412 U.S. 291, 296 (1983).

The United States Supreme Court in *Murphy* made clear that a formal arrest is not always necessary to conduct a search without a warrant. *Id.* at 295-96. In *Murphy*, the Court upheld the warrantless search for scrapings under a suspect's fingernails, which ultimately revealed traces of blood and skin cells and fabric from the strangled victim's nightgown, even though the suspect had not been placed under formal arrest. *Id.* First, prior to the search there was probable cause to believe the suspect committed murder. *Id.* at 294-95. Second, the search of the suspect's fingernails was reasonably related to the circumstances necessitating the intrusion because (1) the detention of the suspect "sufficiently apprised" the suspect of the officer's suspicions "to motivate him to attempt to destroy what evidence he could without attracting further attention"; (2) the evidence (the residue of blood, skin, and fabric under the suspect's fingernails) was "read[ily] destructib[le]"; and (3) the search itself was a "very limited intrusion." *Id.* at 296.

To reach this conclusion, the Court relied on the principles of *Chimel v. California*, 395 U.S. 752 (1969), which delineates the search-incident-to-lawful-arrest exception. *Murphy*, 412 U.S. at 295. The *Murphy* Court stated that *Chimel* "recognized [that] the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Id.* The Court also distinguished a "full *Chimel* search" incident to a formal arrest from the "very limited search" present in *Murphy* where no arrest took place at the time of the search. *Murphy*, 412 U.S. at 296.

Later cases in this circuit applying *Murphy* use the term "exigent circumstances" to refer to the high risk that evidence

will be destroyed in a particular situation. *See, e.g.*, *United States v. Chapel*, 55 F.3d 1416, 1419 (9th Cir. 1995) (en banc) ("Seizures of evidence based on exigent circumstances do not, of course, have to be accompanied by an arrest."); *United States v. Device, Labeled Theramatic*, 641 F.2d 1289, 1294 (9th Cir. 1981) ("Such [exigent] circumstances exist where . . . there is a high risk that evidence will be destroyed."). *See generally* 3 Wayne R. LaFave, Search and Seizure § 5.4(b) (4th ed. 2004 & Supp. 2011-2012) (discussing search of a person for evidence without arrest).

**[5]** Accordingly, the search of Pope was justified notwithstanding Officer Marcus' failure to obtain a warrant if (1) there was probable cause to arrest Pope, (2) there was a high risk that evidence would have been destroyed (*i.e.*, an exigent circumstance), and (3) the search was commensurate with the circumstances necessitating the intrusion. *Cf. Chapel*, 55 F.3d at 1419 (discussing the requirements to take a blood sample under exigent circumstances). When Pope admitted that he was in possession of marijuana, Officer Marcus obviously had probable cause to arrest him for possession of a controlled substance. Furthermore, if Officer Marcus had allowed Pope to leave his presence without conducting the search, there was a high risk that the evidence would have been hidden or destroyed. Pope knew he was under suspicion, and the pocket-sized amount of marijuana that Officer Marcus suspected him of possessing could have easily gone "up in smoke" if Pope had had the chance to dispose of it. Finally, the search was minimally intrusive. Officer Marcus merely instructed Pope to place whatever marijuana he had on the hood of the car. *Cf. Murphy*, 412 U.S. at 296 ("very limited search . . . under [defendant's] fingernails"). In addition, the incident took place in a remote forest area, which could have affected the time needed to get a warrant and would have increased the risk that Pope might hide or destroy the evidence. Therefore, Officer Marcus' warrantless search was justified under *Murphy*.

## IV. Conclusion

Officer Marcus' initial command for Pope to empty his pockets was not a Fourth Amendment search because it did not result in an intrusion upon Pope's reasonable expectation of privacy in the contents of his pockets. Officer Marcus' second command for Pope to empty his pockets, which constituted a Fourth Amendment search, was a justified warrantless search because there was probable cause to believe Pope was possessing marijuana, there was a high risk that the evidence would be destroyed, and the search was a very limited intrusion.

Accordingly, we **AFFIRM** the district court's order affirming the magistrate court's order denying Pope's motion to suppress evidence.