**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David URIAS, Defendant-Appellant.**

**No. 80–1664.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1981.

Decided June 15, 1981.

**622**

Stephen E. Hoffman, Frank & Milchen, San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., Asst. U. S. Atty., argued, M. James Lorenz, U. S. Atty., Larry P. Zoglin, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS and WALLACE, Circuit Judges, and WHELAN,* District Judge.

CHAMBERS, Circuit Judge:

We affirm Urias' judgment of conviction of transporting illegal aliens (8 U.S.C. § 1324(a)(2)). There was clearly sufficient evidence to support the jury's verdict and there was no error in the district judge's denial of the motion to suppress evidence.

The aliens, after first saying that they were from Mexico, admitted to the arresting officer that they were from El Salvador and had entered the country illegally. Both testified and identified Urias as the driver of the pickup truck in which they were found at the time of the arrests. They testified that before crossing the border they stayed in a hotel room in San Luis, Sonora, Mexico, and attempted to find someone who would drive them north. The appellant agreed to drive them to Los Angeles for $200 each. He knew there were

Salvadoran and he had instructed them to say they were Mexican if they were stopped.

The arrests were made near a checkpoint on California State Highway 111, about 40 miles north of the international border. An experienced Border Patrol officer stationed at the checkpoint saw a green pickup-camper in a crosswise position on the highway; it had apparently turned to take a dirt road (the officer testified that it was more of a "well beaten pathway" than a road) that went to a state fish hatchery. The vehicle had not passed through the checkpoint from the north and the officer therefore concluded that it was approaching from the south on Highway 111. The paved road to the hatchery was located a short distance away. The officer knew from his experience that vehicles carrying illegal aliens often turned off onto this dirt road as they came near the checkpoint. He testified that in his experience about 75% of the vehicles that turned there (other than vehicles of hatchery employees) were carrying illegal aliens attempting to avoid the checkpoint. The officer was familiar with the few local residents and employees at the hatchery and he recognized their vehicles. The pickup did not meet the description of any local vehicle.

He drove to the hatchery, having the advantage of good visibility of the entire desert area around him. He saw no other vehicles as he approached the hatchery, but when he arrived there he saw a green pickup with a camper top next to one of the buildings. It was stopped with its motor running. There was a man in the driver's seat and two passengers, of Latin appearance, sitting next to him in the front seat. He drove his car alongside the driver's window and stopped. The driver acknowledged his presence but the two passengers stared straight ahead. The officer asked, "How's it going?" Urias responded, "I am looking for Holtville," a town that was about 40 miles south and east of that location. The officer then asked Urias why he did not ask his passengers the location of Holtville, and

* The Honorable Francis C. Whelan, United States District Judge for the Central District of California, sitting by designation.

he responded that he did not know them but had "just picked them up down the road." The officer got out of his car, walked around the back end of the pickup to the passenger side, and in English asked them how they were. They did not acknowledge his presence. He then asked them, in English, to get out of the pickup, but they continued to stare straight ahead. Then he asked them, in Spanish, to get out of the truck and they complied. After asking a few questions, he determined that they were illegal aliens.

The government argues that there was no stop and, in any event, that there was founded suspicion. We need not address the "stop" issue as it is very clear that there was no error in the district judge's finding of founded suspicion, much less "clear error" which is the standard on appeal. *United States v. Post*, 607 F.2d 847 (9th Cir. 1979). The officer was entitled to assess the facts, and draw appropriate deductions, in the light of his experience as a Border Patrolman, his knowledge of this area of California, and his knowledge of alien traffic. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Cortez*, —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

Affirmed.