142 F.3d 446
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Rutilo MARTINEZ-ARMENDARIZ, Defendant-Appellant.
 No. 97-50357.
D.C. No.CR-97-CR-00079-MLH.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 7, 1998**.
Decided April 22, 1998.
 
 Appeal from the United States District Court for the Southern District of California Marilyn L. Huff, District Judge, Presiding.
 Before GIBSON***, SCHROEDER, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rutilo Martinez-Armendariz appeals his conviction for possession of marijuana with intent to distribute under 21 U.S.C. § 841(a)(1). The district court denied Martinez's motion to suppress evidence that was obtained from a search of his vehicle. Martinez contends that the evidence was obtained in violation of the Fourth Amendment because the stop was not justified by reasonable suspicion. Martinez also argues that the district court erred in denying his objection to the admission of hearsay evidence. We affirm the district court's rulings.
 
 BACKGROUND
 
 3
 At approximately 5:00 a.m. on December 3, 1996, a seismic sensor monitored by the United States Border Patrol registered activity along the California-Mexico border indicating pedestrian traffic on the south side of the All-American Canal. ER 18. The canal is located in the United States, just across the border in an area called Greeson's Waste. Greeson's Waste is a flat open rural area with little vehicular traffic, and contains a number of unpaved dirt roads. ER 15. There are no residences or businesses in the immediate area, and typically only Border Patrol employees, occasional field workers, and 24-hour duty irrigation workers use the roads in Greeson's Waste. ER 39.
 
 
 4
 Border Patrol Agent Robert Myers, with eleven years of border patrol experience, was on duty in Calexico when a dispatcher notified him that the sensors had picked up pedestrian traffic just south of the canal. ER 17-18. In response, Myers took up a concealed position approximately half a mile from the canal where he had a direct and unobstructed view towards Greeson's Waste. ER 18-19.
 
 
 5
 Myers testified that drug and alien smugglers typically operate in the Greeson's Waste area at dusk or in the early morning hours between 4:00 a.m. and 6:00 a.m, and that during the previous year he had been involved with five alien smuggling arrests and eight narcotics seizures in the area. ER 16-17.
 
 
 6
 For the 45 minutes following the first sensor hits Myers saw no lights, vehicular traffic or field workers. ER 21. During that time he observed only a couple of vehicles driving on Anza Road; a road that parallels the canal and the border. ER 22-24. Approximately 35 minutes after learning of the first sensor hits Myers was informed of a second set of sensor hits. Because the north sensors that were activated were directly across from the location of the those on the south side, he concluded that people had crossed the canal. ER 20.
 
 
 7
 Within minutes of learning of the second set of sensor hits Myers observed the sudden appearance of headlights in the Greeson's Waste location, directly north of the canal. ER 21. The vehicle was first visible at the intersection of Anza Road and a smaller road, suggesting to Myers that the vehicle had been travelling without headlights before it arrived at the intersection. ER 21-23. The vehicle continued approximately 200 yards up Greeson's Waste, came to an abrupt stop, made a U-turn, and returned to Anza Road, leading Myers to believe that the driver was unfamiliar with the area, and therefore not an irrigation or field worker. ER 24. Thereafter, the vehicle turned onto Anza Road heading east, and then turned south on a road leading to a local highway. ER 25. Myers determined that the vehicle was leaving the area soon after emerging from the direction of the border, which was consistent with his expectations of a smuggler's behavior. ER 24-25.
 
 
 8
 Myers subsequently left his position and caught up with the vehicle on the highway. At this point he could see that the vehicle was a large van, which he believed was typically used in smuggling activities. ER 28. As he approached the passenger side of the van, Myers noticed several large burlap bundles in plain view, and noticed the smell of marijuana. ER 29. A search of the vehicle produced 477 pounds of marijuana. The driver, Rutilo Martinez-Armendariz, was arrested and convicted of possession of marijuana with intent to distribute.
 
 ANALYSIS
 I. DENIAL OF THE MOTION TO SUPPRESS
 
 9
 Whether reasonable suspicion exists under a given set of facts is a legal conclusion subject to de novo review. Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); United States v. Fuentes, 105 F.3d 487, 490 (9th Cir.1997). An officer has reasonable suspicion to make a brief investigatory stop of vehicles near the United States' international border where such an officer is "aware of specific articulable facts, [taken] together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); see also United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
 
 
 10
 In assessing the facts, officers may draw appropriate deductions from their experiences as border agents, from the characteristics of the area, and from their knowledge of alien smuggling activities. United States v. Urias, 648 F.2d 621, 623 (9th Cir.1981) (citing Brignoni-Ponce, 422 U.S. at 884-85). Moreover, "the facts used to establish 'reasonable suspicion' need not be inconsistent with innocence." United States v. Franco-Munoz, 952 F.2d 1055, 1057 (9th Cir.1991). Ultimately, the court must consider the totality of the circumstances in evaluating the validity of a stop. Cortez, 449 U.S. at 417.
 
 
 11
 In the present case, Myers stopped Martinez's van for several reasons.[1] In Myers' experience, Greeson's Waste is a popular location for smuggling activities that typically occur between 4:00 a.m. and 6:00 a.m. The Martinez stop took place at 5:00 a.m.[2] Also, the fact that the vehicle's headlights suddenly appeared at the intersection suggested to Myers that the vehicle had previously been travelling in stealth without lights. But Myers did not decide to detain the vehicle until he witnessed behavior which he felt demonstrated that the driver was not a field or irrigation worker. First, Myers had not seen any workers in the area for the previous 45 minutes. Second, Myers noted that the "driver wasn't familiar with the area" because he made an abrupt U-turn off of the dirt road, whereas "irrigators generally are familiar with the dirt roads between the fields." ER 24. Furthermore, the vehicle's apparent origin at the border and "direct" route to the highway lead Myers to believe that the van was leaving the area, which was consistent with his expectations of a smuggler's behavior. The fact that the vehicle was a van also supported his suspicion, because in his experience, vans are the most common vehicles used by smugglers. ER 28.
 
 
 12
 Viewed in totality, the preceding facts justify a finding of reasonable suspicion. See Brignoni-Ponce, 422 U.S. at 884-85 (reasonable suspicion may be based on the following factors, among others: (1) characteristics of the area; (2) proximity to the border; (3) usual traffic patterns; (4) previous experience with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior; and (7) vehicle characteristics). Therefore, the stop did not violate the Fourth Amendment because it was justified by reasonable suspicion.
 
 II. HEARSAY
 
 13
 Whether the district court correctly construed the hearsay rule is a question of law reviewable de novo. United States v. Colicott, 92 F.3d 973, 978 (9th Cir.1996). At trial, Myers testified that the electronic border sensors were activated soon before Martinez's car appeared in the Greeson's Waste location. Martinez contends that this testimony constituted hearsay, and argues that the government was required to offer the testimony of the person who directly witnessed the activation of the sensors. Pursuant to the Federal Rules of Evidence 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 
 
 14
 Martinez's argument fails because Myers' testimony was not offered for the truth of the matter asserted. The government contends that Myers' testimony was offered to show what was in the agent's mind when he stopped the vehicle, and not to prove that the sensors were indeed activated. This contention is consistent with the district court proceedings. The district court weighed all of the factors surrounding the stop, and addressed the sensor testimony as follows:
 
 
 15
 From the observation of the agent, the agent testified that he had responded to this area after sensor alerts, and, significantly, the sensor alerts were on both sides of the canal, based on his training and experience, leading him to conclude that something was being smuggled or transported across the canal.
 
 
 16
 United States v. Martinez-Armendariz, No. 97-CR-0079-MLF, Transcript of Proceedings at 47 (S.D.Cal. February 28, 1997). The court did not take Myers' testimony as evidence that the sensors had been activated. Instead, it considered the reasoned inferences that Myers made based on his belief that the sensors had been activated.[3] Consequently, the district court did not err in denying Martinez's objection to hearsay.
 
 CONCLUSION
 
 17
 The district court's denial of the motion to suppress evidence and its denial of Martinez's hearsay objection are affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 **
 The panel unanimously found this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 * Honorable Floyd R. Gibson, Senior United States Circuit Judge, 8th Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Although Myers was aware that Martinez's vehicle was the only vehicle that emerged from the direction of the border soon after sensors had indicated that someone crossed the canal, that knowledge is not essential in establishing his reasonable suspicion because several other factors support his suspicion
 
 
 [2]
 Martinez contends that the time of the stop, 5:00 a.m., should not be a factor in finding reasonable suspicion because this Court found that smuggling frequently takes place around rush hour and shift change. United States v. Franco-Munoz, 952 F.2d 1055, 1057 (9th Cir.1991). But that determination was based on an agent's testimony that a lot of smuggling took place around shift change at a marked patrol stationed on the Interstate. Id. Clearly that finding was based on the specific facts of that case, and is not controlling in the present case
 
 
 [3]
 Appellant alternatively argues that even if the testimony was not offered for the truth of the matter, it is irrelevant because it relates to the agent's subjective state of mind. However, officers can make inferences based on their experience that support a stop as long as the inferences are reasoned and grounded in objective facts. Cortez, 449 U.S. at 416-18. Based on his experience and training, Myers' suspicion was supported by the fact that he believed the sensors had been activated, and therefore it is relevant to a finding of reasonable suspicion