**UNITED STATES of America, Appellee,**

v.

**Richard Kevin POST, Appellant.**

**No. 78–3733.**

United States Court of Appeals,
Ninth Circuit.

Oct. 11, 1979.

---

1. *See* cases at pages 607 and 843, *supra* of the majority opinion.

John W. Demco, Seattle, Wash., for appellant.

Michael P. Ruark, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before GOODWIN and KENNEDY, Circuit Judges, and MURRAY *, District Judge.

GOODWIN, Circuit Judge:

Richard Kevin Post appeals his conviction on two counts arising out of his possession of cocaine. He sought to exclude evidence discovered when an agent of the Drug Enforcement Agency "patted him down" in an interrogation room at the Port of Seattle Police Department. Post contends that the district court erroneously denied his motion to suppress. We affirm the conviction.

The search in the interrogation room was the culmination of eighteen hours of surveillance of Post and Richard Roberts by

---

* The Honorable Frank J. Murray, United States District Judge for the District of Massachusetts, sitting by designation.

DEA agents in two cities.[1] Roberts initially attracted the attention of Special Agents Snyder and Boggs as he paced the length of the airport, tightly holding a brief case. The agents watched him meet Post, the appellant. They saw Post buy two one-way tickets to Los Angeles. The agents ascertained that the tickets, purchased with cash, were issued to R. Roberts and R. Post. The DEA computer indicated that in 1972 R. Post, a male of Seattle, was a known narcotics trafficker. The agents' interest in the two heightened. Post and Roberts did not board their scheduled flight, nor a second flight on which they had reserved seats. Agent Snyder saw them board a third flight to Los Angeles. He told the Los Angeles DEA office what he had observed.

When the two men arrived in Los Angeles, they took a cab. Special Agent Beaulieu followed them. The substance of his observations was: (1) During the cab ride, Post and Roberts repeatedly looked out the back window as if to determine whether they were being followed. (2) They opened a brief case, and counted a sum of money (acts appellant says did not occur). (3) The two went to Hermosa Beach, got out of the cab, and stood on a corner looking around them and then proceeded to a building in the next block. Agent Beaulieu reported these observations to Agent Snyder.

Four DEA agents were waiting when Post and Roberts arrived in Seattle the next morning. The two went to a restroom, followed by one of the agents. Post went into a stall, and the agent saw Post lift one leg and then the other. The restroom had not been searched for weapons. The two left the restroom and, as they walked through the airport, they were stopped . Snyder identified himself as a DEA agent. He testified that he asked if they would accompany him to an interview room for questioning and that they nodded affirmatively. Both defendants testified that they were detained. The group went into an elevator and down a hall to the police station.

Snyder took Post into an interview room. He gave him his *Miranda* warning, said he was going to do a weapons search, and felt a bulge on Post's leg. Snyder testified that Post voluntarily exposed the bag on each leg; Post testified that he was ordered to take them off his legs. The bags contained cocaine.

The trial judge determined that "the stop and search was reasonable and well founded." He made ten findings of fact to support that determination. Post challenges the stop, the search, the trial court's findings, and the government's testimonial evidence. This court must view the evidence in the light most favorable to the government. *United States v. Vital-Padilla,* 500 F.2d 641, 642–43 (9th Cir. 1974); *United States v. Walling,* 486 F.2d 229, 236 (9th Cir. 1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974). This court's review of the trial court's findings is to determine whether those findings are clearly erroneous. *United States v. Cortez,* 595 F.2d 505, 507 (9th Cir. 1979); *United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976); *Costello v. United States,* 324 F.2d 260, 261 (9th Cir. 1963), *cert. denied,* 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650 (1964).

Under the foregoing standard of review, we reject Post's contention that as intentional fabrications Agent Beaulieu's observations may not be considered in reviewing the reasonableness of Post's detention.[2] In

1. Roberts does not join in this appeal. He was indicted and tried with Post and found not guilty.

2. In challenging the agent's report, the appellant attempts to make the showing required to challenge the veracity of an affidavit supporting a search warrant. *United States v. Young Buffalo,* 591 F.2d 506 (9th Cir. 1979); *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Because he does not demonstrate the scienter and materiality required under these cases, we do not rule on the propriety of the analogy. We note, however, that in *Franks* the Supreme Court derived the challenge to a warrant's veracity from the "language of the Warrant Clause itself." 438 U.S. at 164, 98 S.Ct. at 2681.

findings number seven and eight, the district court indicated that it had accepted the agent's observations and had rejected the defendants' testimony. The assessment of the credibility of witnesses is the function of the trier of fact. *Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).

## I

Post alleges that the agents had no right to detain him. He says there were insufficient facts to justify either an arrest or an investigative stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The United States, conceding that there was no probable cause, argues that an investigative stop was justified. *Terry v. Ohio, supra; United States v. Chatman,* 573 F.2d 565 (9th Cir. 1977). We agree.

■ In *Terry,* the Supreme Court recognized that a "police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), *quoting Terry v. Ohio,* 392 U.S. at 22, 88 S.Ct. 1868. The quantum of cause necessary to justify an investigatory stop is a "reasonable" or "founded" suspicion that the person has committed or is about to commit a criminal act. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Holland,* 510 F.2d 453, 455 (9th Cir.), *cert. denied,* 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 674 (1975); *United States v. Scheiblauer,* 472 F.2d 297, 300 (9th Cir. 1973). The founded suspicion must arise

from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in the light of his experience. *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. 1868.

■ A reasonable DEA agent would suspect that Post was committing a crime. The suspicion arose from the actions of Post and Roberts. To experienced agents, these actions were consonant with the behavior of drug couriers.[3] We cannot fail to note the remarkable similarity between the suspect's actions observed in this case and those observed in *United States v. Chatman, supra,* where this court held that such actions created a founded suspicion that justified an interrogation. 573 F.2d at 566–67. In this case there was an added increment of suspicion, for the DEA computer had indicated that R. Post, of Seattle, had a history of narcotics trafficking. The district court's finding, that a founded suspicion justified detaining Post, was not clearly erroneous.

## II

■ Appellant argues that even if the initial stop was justified, the agents exceeded the scope of a *Terry* stop and constructively arrested him when they seized him and took him to the interrogation room. The government's position is that Post voluntarily accompanied the agents to the interrogation room for questioning, and that under *United States v. Chatman, supra,* it was proper to question Post in the interview room.

After this case was tried, the Supreme Court decided *Dunaway v. New York,* —— U.S. ——, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In *Dunaway* the Court held that custodial questioning must be supported by probable cause. *Id.* —— U.S. at ——, 99

---

**3.** These observed actions were the "articulable facts" on which the district court based its determination that there was a founded suspicion that the defendants were engaged in narcotics trafficking. The behavior noted is characteristic of persons using air transport for narcotics traffic. The characteristics include a nervous manner; buying tickets, with cash, to a major drug distribution center such as Los Angeles; virtually immediate return flight; and no luggage. *United States v. Oates,* 560 F.2d 45, 60 (2d Cir. 1977); *United States v. Craemer,* 555 F.2d 594, 595 (6th Cir. 1977). The district

S.Ct. 2248.[4] After close examination, we conclude that, on the record, the facts of this case are not controlled by *Dunaway*. Dunaway was taken, on concededly less than probable cause, from a neighbor's house to a police interrogation room for questioning. Noting that *Terry* had authorized an investigative stop and not an investigative seizure, *id.* —— U.S. at ——, n.12, 99 S.Ct. 2255, the Court concluded that the seizure was not even "roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny." *Id.* —— U.S. at ——, 99 S.Ct. at 2256. The holding that the detention was unlawful was based on the determination, by two lower courts, that Dunaway went involuntarily to the police station.

In this case, the lower court made no finding as to the voluntariness of the appellant's going to the interview room. We have, instead, a conflict of evidence that must be viewed in the light most favorable to the government. *United States v. Walling*, 486 F.2d at 236; *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). As such, this case must be controlled by *United States v. Chatman, supra*. *Chatman* held that, if an officer is justified in stopping a person for questioning the stop does not become an arrest if, without coercion, the officer directs that the questioning occur in a less public place. 573 F.2d at 567. *Accord: United States v. Oates*, 560 F.2d 45, 57 (2d Cir. 1977); *United States v. Salter*, 521 F.2d 1326, 1328–29 (2d Cir. 1975).[5]

### III

Post says that, even if the execution of the stop was proper, the pat-down was improper because it was unreasonable to believe that Post was "armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). We disagree.

■ It is clear that an officer who has the right to stop a person does not necessarily have a concomitant right to search that person. *Dunaway v. New York, supra; Sibron v. New York*, 392 U.S. at 64, 88 S.Ct. 1889; *Terry v. Ohio*, 392 U.S. at 20–21, 88 S.Ct. 1868. Only when an officer justifiably believes that "the individual whose suspicious behavior he is investigating at a close range is armed" may he conduct a limited search for concealed weapons. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), *quoting Terry v. Ohio*, 392 U.S. at 24, 88 S.Ct. 1868.

In *Terry*, the Court closely scrutinized Officer McFadden's conduct and concluded that, despite the fact that he had not observed a weapon or any physical indication of a weapon, it was reasonable to assume, from the nature of the offense contemplated, that Terry was armed and dangerous. 392 U.S. at 28, 88 S.Ct. 1868. It is not unreasonable to suspect that a dealer in narcotics might be armed. *See United States v. Oates*, 560 F.2d 45, 62 (2d Cir. 1977); *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *United States v. Santana*, 485 F.2d 365, 368 (2d Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974).

■ We do not accept appellants' contention that because Post was not searched

court noted that DEA agents have a particular expertise in spotting such dealers.

4. Although the Court did not define custodial questioning, it relied on two significant factors in distinguishing the detention from an investigatory stop and bringing it within the rubric of arrest: "Petitioner was not questioned briefly where he was found", and "[h]e was never informed that he was 'free to go'." *Dunaway v. New York*, —— U.S. at ——, 99 S.Ct. at 2256.

5. After this case was briefed and argued, the Supreme Court granted certiorari in a similar case from another circuit. *United States v. Mendenhall*, 596 F.2d 706 (6th Cir.), *cert. grant-*

ed, —— U.S. ——, 100 S.Ct. 42, 62 L.Ed.2d 29 (1979). Because of the danger to the public from surprise encounters between law enforcement agents and persons reasonably suspected of carrying contraband in crowded airports, this circuit has permitted a *Terry* stop to include the routine "invitation" by the officers to pursue the actual identity check and frisking of the suspect in a nonpublic area of the airport. *United States v. Chatman*, 573 F.2d at 567. To the extent that *Chatman* may be inconsistent with *Mendenhall*, we are bound to follow *Chatman* until the Supreme Court rules otherwise.

where he was found the agents apparently did not fear that Post was armed. Four agents stopped and accompanied Post to the interview room. The situation changed when Agent Snyder entered the room to question Post. The law does not require that an experienced DEA agent, enclosed in a small room with a man he reasonably suspects to be a dealer in narcotics, be certain that a suspect is armed before he can make a limited pat-down for weapons. *United States v. Oates,* 560 F.2d at 63. *See Terry v. Ohio,* 392 U.S. at 23–24, 88 S.Ct. 1868. The district court's determination that the search was reasonable is not error.

Affirmed.