JAMES H. FAULKNER, Retired Justice.
Robert Harry Fields was charged in separate indictments with committing the offenses of possession of a controlled substance in violation of § 13A-12-212, Code of Alabama 1975, and the unlawful sale of a controlled substance in violation of § 13A-12-211, Code of Alabama 1975. Fields’s cases were consolidated for trial, and the jury found Fields guilty of possession of a controlled substance and guilty of unlawful distribution of a controlled substance, as charged in the indictments. He was sentenced to 2 years’ imprisonment on the possession conviction and 12 years’ imprisonment on the unlawful distribution conviction. An order of probation was issued, granting probation in both cases conditioned upon completion of the “boot camp” program and payment of fines and costs.
The sole issue raised on appeal is whether, in the possession case, the officer conducted an illegal stop and search of Fields, and, therefore, whether the evidence of the cocaine discovered pursuant to that search was the fruit of an unlawful search and seizure and was due to be suppressed.
Officer Antonio Gonzales testified that he was employed with the narcotics division of the Dothan Police Department working in the patrol division in a high-crime area of Dothan. Gonzales testified that on four or five separate occasions in September 1988 he observed Fields, a newcomer to this area, hanging around this high-crime area and that on each occasion he attempted to talk to Fields only to have Fields flee as he approached. According to Gonzales, on the evening of October 27, 1988, he observed Fields and Gregory Durr walking east on Powell Street in this high-crime area. Gonzales was traveling west and recognized Fields by his clothing because Fields had been wearing the same clothes on the prior occasions when he had observed him in this area. Gonzales slowed his vehicle, and Fields and Durr turned their heads from him. According to Gonzales, Fields was wearing a sweatshirt with a hood and he *597 pulled the hood, over his face and turned his head away from Gonzales.
Gonzales further testified that when he turned his vehicle around Fields and Durr had disappeared. Gonzales then turned down another street and saw them by some railroad tracks. Gonzales stopped Fields and Durr and, as a part of his routine patrol procedure, asked them for identification. According to Gonzales, Fields told Gonzales that he did not have any identification but that his name was “Robert McPherson.” Durr also did not have any identification but showed Gonzales a bill which had Durr’s name on it.
Gonzales further testified that he patted down Fields and Durr to check for weapons. Gonzales felt a bulge in Fields’s right pants pocket. Gonzales did not reach into the pocket but asked Field what the bulge was. Fields told Gonzales that the bulge in his pants pocket was an aspirin bottle that he had picked up from the railroad tracks. Fields then pulled the aspirin bottle out of his pocket and handed it to Gonzales, saying “you can have it if you want it.”
Gonzales looked inside the bottle and observed a powdery white residue, which he suspected of being a controlled substance. Gonzales then radioed for a narcotics officer to meet him. Governor Jackson and Steve Ham with the narcotics division arrived, and Gonzales turned the aspirin bottle over to them. A field test was performed on a sample from the bottle, which tested positive for cocaine. Fields was then arrested for the unlawful possession of a controlled substance.
“It is well settled that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870 [1877], 64 L.Ed.2d 497 (1980); Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). ‘There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.’ Terry, 392 U.S. at 34, 88 S.Ct. at 1886 (Justice White, concurring). A stop ‘of a restricted investigative scope conducted in a non-coercive manner ... [does] not trigger Fourth Amendment protection at all.’ United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).”
State v. Betterton, 527 So.2d 743, 745 (Ala. Cr.App.1986), affd, 527 So.2d 747 (Ala. 1988).
It is clear that Fields was lawfully stopped and frisked on the authority of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and §§ 15-5-30 and -31, Code of Alabama 1975, which authorize police authorities to conduct a limited stop and frisk for weapons on less than probable cause (1) where police briefly detain an individual to determine who the individual is and to allow the individual to explain any suspicious actions and (2) where the authorities reasonably believe that they may be in danger.
Officer Gonzales stopped Fields to determine his identity and to have him explain his suspicious actions because of the following events: (1) Gonzales had previously observed Fields, who was new to this high-crime area of Dothan, on four or five occasions, and on each occasion Fields had fled when Gonzales approached him; and (2) on the night in question Gonzales observed Fields, who was walking with another individual in this high-crime area, turn his head away from the officer, pull his hood up over his head to hide his face from the officer’s view, and turn down a sidestreet in an attempt to elude the officer.
Officer Gonzales frisked Fields because he reasonably believed that he might be in danger under the circumstances. Gonzales was alone, questioning two men at night in an area where shootings, stabbings, and drug activities occurred frequently, who had exhibited suspicious and elusive actions earlier that evening. Certainly a reasonably prudent person in Gonzales’s circumstances would be warranted in the belief that he was in danger. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883.
Fields is mistaken in his assertion that the cocaine found in the aspirin bottle was discovered pursuant to an illegal *598 search of his person. It is abundantly-clear from the record that Officer Gonzales’s search of Fields’s person was for the limited purpose of uncovering weapons. Gonzales did not physically remove the aspirin bottle from Fields’s pants pocket but rather asked Fields what the bulge in his pocket was. In response to Gonzales’s inquiry, Fields voluntarily removed the aspirin bottle from his pants pocket and handed the bottle to the officer. The record is devoid of any evidence of coercion, duress, or undue influence which Gonzales may have exerted upon Fields to prompt Fields to hand over the aspirin bottle involuntarily-
Because Officer Gonzales’s stop and frisk of Fields was lawful and because Fields voluntarily removed the aspirin bottle from his person and gave the bottle to Gonzales, the circuit court properly denied Fields’s motion to suppress the cocaine found in the aspirin bottle.
■ The foregoing opinion was prepared by JAMES H. FAULKNER, Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.