The defendant was indicted for unlawful possession of controlled substances, in violation of § 13A-12-212, Code of Alabama 1975. The defendant filed a motion to suppress certain evidence and on June 5, 1991, a hearing was held on the motion and the motion was denied. The case was set for trial and the trial judge, after hearing the evidence at trial, granted the motion to suppress and vacated the order denying the motion. The State appeals.
On August 24, 1990, Dothan police officers were notified that a child had been stuck with a hypodermic needle at Granada Apartments. The officers spoke with the apartment manager and learned that a couple of weeks before, an empty syringe box and empty Demerol vial and bottle were found in a dumpster on the apartment property. Police Investigator Parrish, of the Dothan Police Department, testified at trial that he was told by the apartment manager that there were four tenants at Granada who might have access to syringes and drugs.
An investigation revealed that the lot number on the empty Demerol bottle matched the lot number of Demerol that was given to a patient at a particular time on the second floor of a hospital in Dothan. Investigator Parrish discovered that the defendant, who lived at Granada Apartments, worked on the second floor of that hospital. The hospital's associate administrator for nursing, Deborah Duncan, verified that the lot number was actually issued to that hospital.
Ms. Duncan further testified that, about three days before the defendant's arrest, she called Investigator Parrish and told him that she suspected that the defendant was taking narcotics from the hospital. She told Parrish that substances had been signed out for patients, but that these patients had complained that they received no relief. Previously, Investigator Parrish had asked Duncan to call him the next time the defendant would be leaving the hospital for several days. On August 31, 1990, the day of the arrest, Duncan called Parrish and told him that the defendant would be leaving work in the afternoon and would have several days off. Duncan suspected that the defendant would have a controlled substance on her when she left the hospital on that day.
Investigator Parrish testified at trial that on August 30, 1990, he and Dothan police officers Johnathan Pearson and Hilda Peacock, were waiting for the defendant outside the hospital in their patrol cars. The defendant left the hospital and entered a vehicle driven by her husband, a local criminal defense attorney. The police stopped the car in which defendant and her husband were *Page 608 
riding. The trial evidence as to what happened next is conflicting. Testimony for the State seems to indicate that the defendant was getting out of the automobile when the car was stopped by police. The defendant's husband, testifying for the defense, testified that he got out of the car, but that the defendant did not. Nevertheless, as he approached the defendant's vehicle, Officer Parrish informed the defendant that he had reason to believe that she was removing controlled substances from the hospital and that he needed to perform a search.
The record indicates that the defendant asked her husband what she should do. The defendant's husband told the defendant that it would do no good to resist because the police would simply "take her down and do it anyway." The officers searched the defendant, particularly the lab coat that she was wearing. Controlled substances were found on the defendant.
On appeal, the State contends that the trial court erred in granting the defendant's motion to suppress the evidence seized as a result of the search. The defendant had argued that the search by police was without probable cause, thus requiring the suppression of the evidence seized from the defendant. We agree with the State that the trial court did err in granting the defendant's motion to suppress. We hold that the search and the resulting seizure of controlled substances from the defendant was incident to a lawful arrest and was therefore legal.
Investigator Steve Parrish testified at trial that he, along with Officers Pearson and Peacock, went to the hospital on August 31, 1990, for the purpose of stopping and searching the defendant when she got off work. Investigator Parrish testified further that when he received the call from Deborah Duncan that the defendant would be leaving work and would be off for several days, he arranged to have Officer Peacock go with him to the hospital.
At trial, Officer Jonathan Pearson testified that when they stopped the defendant's vehicle, all three police officers approached the defendant's vehicle. The defendant's husband testified that the officers pulled up in a van and a police car, partially blocking his car. The officers then told the defendant that they had reason to believe that she was removing controlled substances from the hospital and that they needed to search her. Officer Peacock stood beside the defendant's car door and asked the defendant to get out. The defendant's husband testified that Officer Peacock "had a hold of her" and that the defendant was told to put her hands on the rear of the vehicle. He testified further that Officer Peacock caught the defendant's right arm and that Steve Parrish held her left arm as they prepared to search her.
We find that the defendant was under arrest at the point when the police officers took "hold" of the defendant. This court has held that, "in determining whether an individual has been seized or has voluntarily chosen to undergo police custody and interrogation, the totality of the circumstances must be considered." Darden v. State, 571 So.2d 1272, 1276
(Ala.Crim.App. 1990), writ denied, 571 So.2d 1280 (Ala. 1990). The court further explained that, "[w]hether an arrest has occurred depends on how a reasonable man in the suspect's position would have understood his situation." Darden, at 1276. "An arrest occurs when one's freedom of movement has been curtailed."Waldrop v. State, 462 So.2d 1021, 1028 (Ala.Crim.App. 1984),cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618
(Ala. 1985). The facts of this case are that when the officers stopped the defendant and her husband the officers immediately told the defendant that they had reason to believe that she had drugs on her and that they needed to search her. It is also important to note that the defendant's husband testified that his car was "semi-blocked in" and that two police officers grabbed his wife's arms and told her to put her hands on the rear of the vehicle so that they could search her. Furthermore, the trial court found that the defendant resisted the search and ruled that the search was non-consensual.
Therefore, in light of the totality of the circumstances, we find that the defendant was placed under arrest by police officers. The defendant's car was semi-blocked by the police. The trial judge found that the defendant did not consent to the search and there was testimony that she resisted the search. *Page 609 
Undoubtedly, the defendant believed that she had been deprived of her freedom of action. The defendant was told by police officers that they were going to search her and she was taken by each arm by the officers, forced to place her hands on the rear of the vehicle and searched against her will.
At this point, we must determine whether the warrantless arrest of the defendant was lawful. The Supreme Court of the United States has held that "to make a warrantless arrest, police must have probable cause to believe that the person to be arrested has committed or is committing a crime." U.S. v.Watson, 423 U.S. 411, 422, 96 S.Ct. 820, 827, 46 L.Ed.2d 598
(1976). "Probable cause . . . to conduct a warrantless arrest exists when police have knowledge or information of facts and circumstances sufficient in themselves to warrant a belief by a person of reasonable caution that an offense has been or is being committed by the person to be arrested." Beck v. Ohio,379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964).
The United States Supreme Court, in Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), dealt with probable cause in the context of search and seizure. This case involved a tip given to police by an anonymous informant that the defendant was involved in drug trafficking. In determining whether there was sufficient probable cause to search the defendant's car, the court adopted a "totality of the circumstances" test. In this case, we believe that based on the totality of the circumstances there was probable cause to conduct a warrantless arrest, because the Dothan police had knowledge or information that was sufficient to warrant a belief that an offense was being committed by the defendant.
The trial evidence showed the following: (1) Several days before the arrest, Investigator Parrish learned from officials at the health department that a child had been stuck with a hypodermic needle at Granada Apartments. Investigator Parrish's investigation revealed that uncovered syringes and a broken Demerol vial and bottle had been found in the trash at the apartments; (2) the lot number of the recovered Demerol bottle matched the lot number of Demerol supposedly administered to a patient at Southeast Alabama Medical Center; (3) the defendant was the only nurse living at Granada Apartments who worked at Southeast Alabama Medical Center; (4) the defendant worked on the second floor of the hospital where the recovered bottle of Demerol was supposedly administered; (5) the defendant was working at the hospital during the time that the recovered bottle of Demerol was supposedly administered; (6) the defendant had access to Demerol and had a key to the narcotics locker where the Demerol was stored; (7) two or three days before the arrest, Investigator Parrish had made an initial investigation at the hospital regarding the defendant and was told by associate hospital administrator, Deborah Duncan, that she suspected the defendant because several patients had complained that they had not received relief from narcotics. Duncan had discovered that these narcotics had been documented in the records by the defendant that the narcotics had been given to the patients; (8) based upon his experience, Investigator Parrish knew that Demerol was a highly addictive narcotic and was widely abused at hospitals; (9) Investigator Parrish asked the defendant's supervisor to advise him when the defendant would be leaving work for an extended period. Again, based upon his experience, Investigator Parrish stated that this would be a time when the defendant would possibly be carrying a controlled substance; (10) on the day of the arrest, the defendant worked at the hospital and had a key to the narcotics locker; (11) on the day of the arrest, Investigator Parrish was advised that fellow nurses had observed the defendant acting as if she was under the influence of something other than alcohol the night before the arrest; (12) on the day of the arrest, Investigator Parrish received a call from the defendant's supervisor that the defendant would be leaving work and would be out for a few days and that if "she [defendant] had drugs, it would be on her that day"; (13) when Officer Parrish arrived at the hospital on the day of the arrest, the defendant's supervisor informed Parrish that through her investigation, though not concluded, she thought that the defendant would have a controlled substance on her. Based upon the *Page 610 
totality of the circumstances listed above, we determine that there was probable cause to believe that an offense was being committed by the defendant.
Furthermore, we conclude that Deborah Duncan was a reliable source and that the information she conveyed to the police was sufficiently reliable and, therefore, provided probable cause to believe that the defendant was removing controlled substances from the hospital. In this case, Duncan was not a detached informant or information source. Rather, she was the hospital's associate administrator for nursing, the defendant's superior. Duncan had met with Investigator Parrish and had shown him hospital records and told him what she suspected. She began her own investigation and on the day of the defendant's arrest, Duncan found a "hundred of Demerol" that had not been prescribed by a physician that the defendant had documented that she had given and actually taken out of the narcotics locker. Duncan did not convey this information to police before the defendant's arrest, but did tell police that if the defendant was going to have drugs on her, it would be that day. Based on her investigation, though not yet concluded, Duncan suspected that the defendant would have drugs on her. Deborah Duncan was an integral participant in this ongoing investigation. Based upon her position with the hospital and the responsibilities that went with that position, Duncan is clearly a reliable informant. "Probable cause may be based on hearsay from a reliable source." Draper v. U.S., 358 U.S. 307,308, 79 S.Ct. 329, 330, 3 L.Ed.2d 327 (1959). Duncan informed the police that the defendant would be leaving the hospital on August 31, 1990, and would not be returning to work for several days. She told the police that if she was going to have drugs on her, it would be on that day. The police acted upon Duncan's tip and performed a lawful warrantless arrest based upon probable cause. We find that the warrantless arrest was based upon probable cause and was, therefore, lawful.
We conclude that the search of the defendant was proper because it was conducted pursuant to a lawful warrantless arrest. This court has held that:
 " 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.'
 "United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973)."
Green v. State, 571 So.2d 356, 359 (Ala.Crim.App. 1990).
Because the search in this case was performed pursuant to a lawful warrantless arrest, no additional justification for the search of the defendant is required. Therefore, the trial court erred in granting the defendant's motion to suppress the evidence. The judgment of the Houston Circuit Court is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All the Judges concur.