On Application for Rehearing
This court's opinion of October 31, 1997, is withdrawn and the following is substituted therefor.
The appellant, Moses E. Williams, pled guilty to possession of a controlled substance, see § 13A-12-212, Ala. Code 1975, and was *Page 754 
sentenced to 15 years imprisonment. That sentence was split, and he was ordered to serve 2 years. Before entering his guilty plea, the appellant moved to suppress evidence of the crack cocaine found in his pocket, arguing that the officers did not have a reasonable suspicion to stop him. Therefore, the appellant alleges that the crack cocaine seized was the "fruit of a poisonous tree." Upon entering his guilty plea, he specifically reserved his right to appeal the suppression issue. This appeal followed.
The appellant argues that the trial court erred in denying his motion to suppress. According to the appellant, the field interview conducted by the police officers constituted an illegal seizure, and any evidence obtained pursuant to that seizure should have been suppressed. We disagree.
On May 15, 1997, Montgomery police officers W.B. Hamil and S.D. Lockridge were patrolling on Martha Street, in the area of a construction site. The area had been the site of recent burglaries, and the Montgomery Police Department had increased patrol in response to reports of those burglaries. While on patrol, Officers Hamil and Lockridge saw the appellant. He was not walking along the street, but through the construction site that had been the target of several burglaries. They stopped the appellant at 5:20 p.m. and, although it was still daylight, the appellant was the only person in the area. The police officers were in a marked patrol car. According to Officer Lockridge, the appellant acted nervous when he saw the officers. Lockridge explained that, "[w]hen he saw our vehicle, he started looking down in different directions. He turned and started walking away in a different direction from us. His actions were real jerky and jittery. . . . Like, when he saw our patrol vehicle, it kind of startled him. That was my observation." (R. at 20.) Officers Hamil and Lockridge approached the appellant and asked him his name, his date of birth, his address, and where he was going. The officers then checked for outstanding warrants on the appellant through local and National Crime Information Center (NCIC) computer databases. The check revealed that the appellant had three outstanding warrants. He was placed under arrest and the officers conducted a search pursuant to the arrest. During the search, they found crack cocaine in the appellant's front right pocket.
The appellant assumes that his encounter with Officers Hamil and Lockridge constituted a seizure that triggered Fourth Amendment protections. However,
 " ' "[i]t is well settled that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourteenth Amendment. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, [1877] 64 L.Ed.2d 497
(1980); Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). 'There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.' Terry, 392 U.S. at 34, 88 S.Ct. at 1886 (Justice White, concurring). A stop 'of a restricted investigative scope conducted in a non-coercive manner . . . [does] not trigger Fourth Amendment protection at all.' United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119
(1985)." ' "
Bush v. State, 695 So.2d 70, 122 (Ala.Cr.App. 1995) (quotingFields v. State, 582 So.2d 596, 597 (Ala.Cr.App. 1991)). The test used to determine whether a seizure has occurred for Fourth Amendment purposes is "whether the police engaged in a show of authority that would lead a reasonable person, innocent of any crime, to conclude that the person was not free to go under all the circumstances. United States v. Castellanos,731 F.2d 979 (C.A. D.C. 1984)." Bush, 695 So.2d at 123. InBush, officers stopped a man on a motorcycle whose general build matched a general description of a murder suspect. The officers asked him his name, his address, and whether he had ever been in jail or had ever been arrested. The police also ran his name through the NCIC computer to see if there were any outstanding warrants. In Bush, we held:
 "Given all the circumstances presented here, we do not believe that the presence of the officers together with the request for identification and other information *Page 755 
would have led a reasonable person to conclude that he or she was being compelled to respond and was not free to leave. What we have here is a stop of a restricted investigative scope, conducted in a noncoercive manner. It did not amount to a seizure and, thus, did not trigger Fourth Amendment protections."
Id.
In this case, Officers Hamil and Lockridge approached the appellant as he was walking in the area of Martha Street. Both officers explained that they conducted a standard field interview with the appellant to ascertain his name and his address. Furthermore, there is nothing to suggest that the officers exercised any show of authority or that they exhibited any coercive conduct. Officer Lockridge stated that the appellant supplied the information voluntarily. The evidence presented during the suppression hearing shows that the encounter between the appellant and the officers was a restricted investigatory stop that did not implicate the Fourth Amendment.
Furthermore, even if a seizure had occurred, the trial court properly denied the appellant's motion to suppress because the officers had a reasonable suspicion to stop the appellant.
It is well established that
 "a police officer may make a brief investigatory detention based upon a 'reasonable suspicion' of criminal activity. This court in State v. Bodereck, 549 So.2d 542, 545-46 (Ala.Cr.App. 1989), quoting from United States v. Post, 607 F.2d 847, 850 (9th Cir. 1979), discussed 'reasonable suspicion' as mentioned in Terry and stated:
 " ' "[T]he quantum of cause necessary to justify an investigatory stop is a 'reasonable' or 'founded' suspicion that the person has committed or is about to commit a criminal act. . . . The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience." ' "
Gaskin v. State, 565 So.2d 675, 677 (Ala.Cr.App. 1990) (emphasis added). When evaluating whether reasonable suspicion for a stop exists, we require that the police officer be able to
 " 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio. . . . The appropriate question to ask is " . . . [W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?". Terry v. Ohio, . . . Daniels v. State, 290 Ala. 316, 276 So.2d 441
(1973).'
 "Sterling v. State, 421 So.2d 1375, 1379
(Ala.Cr.App. 1982)."
Gaskin, 565 So.2d at 677.
The officers in this case presented specific articulable facts to justify the stop of the appellant. First, the appellant was in an area that had been the site of recent burglaries. The appellant was not only in a high-crime neighborhood, but was also walking through the very construction site that had recently been burglarized on several occasions. Furthermore, he began acting nervous when he saw the police vehicle, and he even went so far as to start walking in another direction.
We recognize that the fact that a person is in a high-crime area, by itself, is not enough to create a reasonable suspicion. However, "an area's disposition toward criminal activity is an articulable fact to be considered."Gaskin, 565 So.2d at 677 (citing United States v. Moore,817 F.2d 1105 (4th Cir. 1987), cert. denied, 484 U.S. 965,108 S.Ct. 456, 98 L.Ed.2d 396 (1987)).
This court was not presented with a situation where the appellant was stopped solely because he was in a high-crime neighborhood. Officer Lockridge testified that it was the appellant's actions, coupled with the fact that he had been walking through an area where there had been recent burglaries, that caused him to stop the appellant. Reasonable suspicion may be found when the accused is in a high-crime area and his "conduct contributed to the police officer's suspicion."Id. at 678. *Page 756 
Neither officer saw the appellant engaged in any criminal activity before he was stopped. However, the law does not require that the appellant be engaged in illegal activity before an officer may make an investigative stop.
 " ' "[T]he relevant inquiry in evaluating the presence of reasonable suspicion is ' "not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." ' " ' State v. Washington, 623 So.2d at 397 (quoting United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990)) (quoting United States v. Sokolow, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.ED.2d 1 (1989), and Illinois v. Gates, 462 U.S. 213, 243-44
n. 13, 103 S.Ct. 2317, 2334-35 n. 13, 76 L.Ed.2d 527 (1983))."
Hopkins v. State, 661 So.2d 774, 782 (Ala.Cr.App. 1994). When reviewing the degree of suspicion that attaches to noncriminal behavior, courts should give great deference to the training and experience of police officers. This court has noted that " '[w]hile many factors which can contribute to a reasonable suspicion of criminal activity are subject to a variety of interpretations, it is the experience of an officer that allows him to bring the factors together into a meaningful whole demonstrating reasonable suspicion of criminal activity.' " Id.
at 779 (quoting 2 W. Ringel, Searches and Seizures, Arrests andConfessions § 13.4(a) (2d ed. 1994)). Based on the totality of the circumstances, there were articulable facts to create a reasonable suspicion that criminal activity was afoot. CompareHuffman v. State, 651 So.2d 78 (Ala.Cr.App. 1994) (holding that there was reasonable suspicion where officers observed the accused sitting in a car at a closed service station that had recently been burglarized).
Both officers testified that they did not believe that the appellant had committed or was in the process of committing a crime. No testimony was elicited regarding whether either of the officers believed that a crime was about to be committed. However, lack of such testimony did not invalidate the trial court's finding of reasonable suspicion. Reasonable suspicion, like probable cause, is measured using an objective standard.
" ' "Probable cause is measured against an objective standard. . . . If this objective test is met, it is unnecessary that the officer hold a subjective belief that he has a basis for making the arrest." ' " Hopkins v. State, 661 So.2d 774, 780
(Ala.Cr.App. 1994) (citations omitted.) As stated earlier, the true test of a Terry stop is whether a reasonably cautious person would have believed the stop was justified. Gaskin, 565 So.2d at 677.
Because the officers had a reasonable suspicion to justify the stop, the trial court properly denied the motion to suppress. Based on the foregoing, the judgment of the trial court is affirmed.
APPLICATION FOR REHEARING GRANTED; OPINION OF OCTOBER 31, 1997, WITHDRAWN; OPINION SUBSTITUTED; RULE 39(k) MOTION DENIED; AFFIRMED.
McMILLAN and BROWN, JJ., concur.
LONG, P.J., concurs in part and concurs in the result in part.
COBB, J., concurs in the result only.