Virgil Murray was indicted for unlawful possession of cocaine, a violation of § 13A-12-212, Ala. Code 1975. He subsequently filed a motion to suppress evidence of the cocaine seized at the time of his arrest. Following a suppression hearing, the trial court granted Murray's motion and suppressed the evidence. The state appeals.
The following facts were established at the suppression hearing. At approximately 2:00 a.m. on March 30, 1997, E.H. Sisson and M.A. Burdette, officers with the Montgomery Police Department, were in their police vehicle on routine patrol in the area of the Sherwood Apartments. According to Officer Sisson, he and his partner were driving through the parking lot of the apartment complex because there had been problems with car burglaries and car thefts in apartment complexes throughout the city. Officer Sisson testified that as a police officer he had handled "countless" reported incidents of breaking and entering of vehicles in apartment complexes. (R. 14.) He described apartment complexes as "shopping outlet[s] for car burglaries." (R. 15.)
As they drove through the parking lot of the Sherwood Apartments, the officers noticed two individuals sitting in a parked car. Officer Sisson testified that as he slowed down to get a closer look at the individuals in the car, he saw them "scoot
down in the front seat," as if "they were trying to avoid being seen by us." (R. 4, 11.) Taking into account that it was 2:00 a.m. and that the individuals in the car had scooted down in their seats in a suspicious manner, Officer Sisson decided to investigate further.
The officers stopped their patrol car, got out, and approached the parked car. Officer Burdette approached the driver's side of the car, while Officer Sisson went to the passenger side. At that point, Murray, who was sitting in the passenger seat, rolled his window down. Officer Sisson asked Murray for his name, age, and date of birth. Officer Sisson testified that Murray provided him with an age and a date of birth that were inconsistent. He stated that when he pointed out the discrepancy to Murray, Murray laughed and told him that "he had lied so many times about his name [that] he couldn't remember his `real stuff.'" (R. 5.) Because he believed it was necessary to make further inquiry and to "find out exactly who he was," Officer Sisson asked Murray to step out of the car. (R. 5.) Officer Sisson stated that as Murray opened the car door and was in the process of getting out of the vehicle, he dropped a clear plastic bag containing white powder onto the ledge of the passenger side door. Officer Sisson testified that the white substance appeared to be powder *Page 948 
cocaine. Officer Sisson retrieved the bag and arrested Murray for possession of a controlled substance. The substance was later positively identified as cocaine.
Officer Burdette's testimony was similar to that of Officer Sisson; however, she stated that she did not actually hear the verbal exchange between Officer Sisson and Murray or see Murray drop the bag of cocaine.
In its order granting Murray's motion to suppress, the trial court found that "the officers did not have reasonable suspicion that [Murray] had committed or was about to commit a crime" and that "the reasons given by the officers did not justify [Murray's] being detained." (C. 9.) The trial court ruled that "the cocaine discovered as a result of the detention should be suppressed and excluded from the evidence." (C. 9.)
On appeal, the state argues that the officers had the right to approach the parked car to ask its occupants questions about their identities and, further, that Officer Sisson had a "reasonable suspicion," based on specific and articulable facts, that criminal activity might be afoot and that, therefore, he was authorized in ordering Murray out of the car to conduct a brief investigatory detention aimed at dispelling his suspicions. The state argues that because this initial intrusion was valid, the discovery of the cocaine, which fell onto the ledge of the car door as Murray got out of the vehicle, was also valid. Thus, the state contends that the trial court erred in granting Murray's motion to suppress the evidence of the cocaine.
In Williams v. State, 716 So.2d 753 (Ala.Cr.App. 1998), this court stated:
 "It is well established that "`a police officer may make a brief investigatory detention based upon a "reasonable suspicion" of criminal activity. This court in State v. Bodereck, 549 So.2d 542, 545-46 (Ala.Cr.App. 1989), quoting from United States v. Post, 607 F.2d 847, 850 (9th Cir. 1979), discussed "reasonable suspicion" as mentioned in Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] and stated:
 "`"`[T]he quantum of cause necessary to justify an investigatory stop is a "reasonable" or "founded" suspicion that the person has committed or is about to commit a criminal act . . . . The founded suspicion must arise from specific facts and not inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience.'"'
 "Gaskin v. State, 565 So.2d 675, 677
(Ala.Cr.App. 1990) (emphasis added [in Williams]). When evaluating whether reasonable suspicion for a stop exists, we require that the police officer be able to
 "`"point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio . . . . The appropriate question to ask is `. . . [W]ould the facts available to the officer at the moment of the seizure the search "warrant a man of caution in the belief" that the action taken was appropriate?'. Terry v. Ohio, . . . Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973)."
 "`Sterling v. State, 421 So.2d 1375, 1379
(Ala.Cr.App. 1982).'"
"Gaskin, 565 So.2d at 677."
716 So.2d at 755.
In Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877,20 L.Ed.2d 889 (1968), the United States Supreme Court stated that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person." As this court noted in Williams:
 "The test used to determine whether a seizure has occurred for Fourth Amendment purposes is `whether the police engaged in a show of authority that *Page 949 
would lead a reasonable person, innocent of any crime, to conclude that the person was not free to go under all the circumstances. United States v. Castellanos, 731 F.2d 979 (C.A.D.C. 1984).'"
716 So.2d at 754, quoting Bush v. State, 695 So.2d 70, 122
(Ala.Cr.App. 1995).
In Hill v. State, 690 So.2d 1201, 1203 (Ala. 1996), the Alabama Supreme Court stated:
 "`Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'"
Quoting Ex parte Agee, 669 So.2d 102, 104 (Ala.Cr.App. 1995). However, the Court noted:
 "`Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate court] will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts."
690 So.2d at 1203, quoting Stiles v. Brown, 380 So.2d 792, 794
(Ala. 1980). In this case, the evidence presented at the suppression hearing was undisputed. Only Officers Sisson and Burdette testified, and Murray did not dispute their account of the events. In fact, in his brief to this court, Murray adopts the state's statement of facts as set out in its brief. Our review of the trial court's application of law to those undisputed facts is de novo.
The evidence presented during the suppression hearing showed that, for purposes of the Fourth Amendment, no "seizure" occurred when Officer Sisson initially approached the parked car in which Murray was sitting and questioned Murray about his name, age, and date of birth. "`The mere approach and questioning of . . . persons [in a parked vehicle] does not constitute a seizure.'" Christmas v. State, 624 So.2d 684, 685 (Ala.Cr.App. 1993), quoting 3 W. LaFave, Search and Seizure § 9.2(h) (2d ed. 1987). Officer Sisson testified that he did not activate the patrol car's blue lights before he approached the parked car. There was no evidence that the officers approached Murray with their weapons drawn or that Officer Sisson questioned Murray in a truculent or coercive manner. The mere presence of the officers, together with the limited request for information, did not amount to a "show of authority" so that a reasonable person, under the circumstances, would have concluded that he was not free to go. See Atchley v. State,393 So.2d 1034, 1040-44 (Ala.Cr.App. 1981).
However, the encounter became a "seizure," and thus triggered the protection of the Fourth Amendment, when Officer Sisson told Murray to get out of the vehicle. See Christmas, 624 So.2d at 685; and Worthy v. State, 473 So.2d 634, 636 (Ala.Cr.App. 1985). Our review of the record convinces us that this seizure was lawful. The officers in this case presented specific and articulable facts to create a "reasonable suspicion" that criminal activity may have been afoot, thus authorizing Officer Sisson to order Murray out of the car for a brief investigatory detention. The officers, who were aware that apartment complexes were frequently and had recently been the site of automobile break-ins, observed Murray and his companion sitting in a parked car in an apartment complex at 2:00 a.m. The time of day coupled with an area's disposition toward crime are relevant considerations in a reasonable-suspicion analysis. 4 W. LaFave, Search and Seizure § 9.4(f) (3d ed. 1996). See, e.g., Gaskin v. State, 565 So.2d 675, 677 (Ala.Cr.App. 1990); and Duckworth v. State, 612 So.2d 1284, 1287-88 (Ala.Cr.App. 1992) (Bowen, J., concurring specially). Upon seeing the officers, Murray and his companion "scooted down" in their seats, in what appeared to the officers to be an effort to avoid being seen. It is well settled that furtive actions at the approach *Page 950 
of law officers "are strong indicia of mens rea." Ex parte Tucker,667 So.2d 1349, 1347 (Ala. 1995). See 4 W. LaFave, Search and Seizure § 9.4(f) (3d ed. 1996), and 2 W. LaFave, Search and Seizure § 3.6(d) (3d ed. 1996). Furthermore, when Officer Sisson approached Murray and asked him basic identification questions, Murray gave contradictory responses concerning his age and his date of birth and then even admitted that he often lied about his name. A suspect's inconsistent and conflicting responses to police questioning may contribute to a police officer's suspicion. Childress v. State, 455 So.2d 175, 177 (Ala.Cr.App. 1984). See 2 W. LaFave, Search and Seizure § 3.6(f) (3d ed. 1996).
"`"[T]he relevant inquiry in evaluating the presence of reasonable suspicion is `"not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."'"'" Hopkins v. State,661 So.2d 774, 782 (Ala.Cr.App. 1994), quoting State v. Washington,623 So.2d 392, 397 (Ala.Cr.App. 1993) (quoting United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990)). Based on the totality of the circumstances, we conclude that there were articulable facts to create a reasonable suspicion that criminal activity was afoot. Where an officer has "reasonable suspicion" for an investigatory detention of a suspect in an automobile, the officer is authorized to ask the suspect to get out of the automobile. Ex parte Carpenter, 592 So.2d 627, 631 (Ala. 1991); see also Christmas, 624 So.2d at 685. Thus, Officer Sisson was authorized to ask Murray to step out of the car.
Once Officer Sisson saw the clear plastic bag of white powder that Murray dropped onto the ledge of the car door as he got out of the car, there was probable cause both to arrest Murray and to seize the plastic bag. Officer Sisson testified that the substance in the bag appeared to be powder cocaine. The warrantless seizure of the plastic bag and its contents was lawful under the plain-view doctrine. See Christmas, 624 So.2d at 685.
For the reasons stated above, we hold that the trial court erred in granting Murray's motion to suppress the evidence of the cocaine. Accordingly, the judgment of the trial court is reversed, and the cause is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan, Cobb, Baschab, and Fry, JJ., concur.