BASCHAB, Judge.
The appellant, Michael A. Lindsey, pled guilty to unlawful possession of a controlled substance (cocaine), a violation of § 13A-12-212(a)(l), Ala.Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of ten years in prison. See § 13A-5-9(a)(l), Ala.Code 1975. It then suspended his sentence and placed him on supervised probation for five years. Finally, it imposed a $1,000 Demand Reduction Assessment Act fíne. See § 13A-12-281, Ala.Code 1975. The appellant did not file any post-judgment motions. This appeal followed.
I.
The appellant argues that the trial court erroneously denied his motion to suppress cocaine law enforcement officers seized from his stomach. When he entered his guilty plea, he reserved the right to raise this argument on appeal.
“ ‘[Cjonflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court.’ Atwell v. State, 594 So.2d 202, 212 (Ala.Cr.App.1991), cert. denied, 594 So.2d 214 (Ala.1992). ‘[A] trial court’s ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.’ Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App.1991) (citations omitted).”
Rutledge v. State, 651 So.2d 1141, 1144-45 (Ala.Crim.App.1994).
During the suppression hearing, Officer Cole Lumpkin of the Gadsden Police Department testified that, shortly before 1:00 a.m. on March 10, 2002, he was patrolling the parking lot of the Hunt and Fish Club; that the owner of the club had asked law enforcement officers to patrol the parking lot because of shootings, assaults, and disturbances that had occurred in the parking lot during the months preceding this incident; that he saw the appellant sitting in his vehicle; that the appellant was parked in the same place with the engine of his vehicle running for between thirty and forty-five minutes; that he became suspicious and approached the appellant’s vehicle; that the appellant turned off his vehicle when he approached; that he asked the appellant for his driver’s license; that he smelled the strong odor of alcohol on the appellant’s breath, and the appellant’s speech was slurred; that he asked the appellant to get out of the vehicle because he could tell the appellant was highly intoxicated; that the appellant stepped to the trunk of the vehicle; that he - approached the appellant to perform a pat-down search; that the appellant reached into his pocket, pulled out a plastic bag that contained a waxy brown material that *1021 he believed to be cocaine, and put the bag into his mouth; that he grabbed the appellant’s jaw and told him to spit it out, but the appellant refused to open his mouth and swallowed the bag; that he arrested the appellant and took him to the emergency room; that hospital personnel performed an X-ray to find out if anything was in the appellant’s stomach and subsequently administered charcoal treatment to the appellant; that the appellant vomited a bag that contained three rocks of crack cocaine; and that they retrieved the bag and sent it to the Alabama Department of Forensic Sciences.[1] Lumpkin also testified that, when a suspect swallows a controlled substance, there are medical concerns involved in retrieving that substance.
The appellant testified that he arrived at the Hunt and Fish Club around 12:30 a.m. and drank a beer; that he left the club about five minutes later, got into his vehicle, and made a telephone call; that he did not crank his vehicle; that he had telephoned a friend and was waiting for her to arrive; that, after he had been sitting in the vehicle between ten and fifteen minutes, Lumpkin approached him and asked for his driver’s license; that, after he gave Lumpkin his driver’s license, Lumpkin asked him to get out of his vehicle; that Lumpkin asked him if he had been drinking; that, when he said that he had, Lumpkin asked for his keys; that Lump-kin searched him and his vehicle; that, at some point, Lumpkin handcuffed him; that, when Lumpkin started handcuffing him, he reached into his pocket, removed crack cocaine from his pocket, put it into his mouth, and swallowed it; that he was taken to the emergency room; that he was not asked if he consented to any treatment; that Lumpkin insisted that he wanted his stomach pumped; that he told hospital personnel that he did not want any treatment; that he asked the nurse if he had any say in the matter, and she told him that he did not; that he was handcuffed; and that his stomach was pumped.
A.
Initially, the appellant contends that the trial court should have granted his motion to suppress because law enforcement officers did not have a warrant to have his stomach pumped.
“ ‘This Court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App.1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985).... Pursuant to a lawful arrest, a search of the person can be conducted for the purpose of obtaining weapons, evidence, or contraband. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).’
“Bivins v. State, 710 So.2d 521, 524 (Ala.Cr.App.1997).”
Hopper v. City of Prattville, 781 So.2d 346, 350 (Ala.Crim.App.2000) (emphasis omitted).
Probable cause coupled with exigent circumstances justified Lumpkin having the appellant’s stomach pumped. Lumpkin *1022 testified that he saw the appellant take a plastic bag out of his pocket; that the bag contained a waxy brown substance that he believed to be cocaine; that the appellant put the bag into his mouth; and that the appellant swallowed the bag despite his order to spit the bag out. Therefore, Lumpkin had probable cause to have the appellant’s stomach pumped.
Also, the probability that the evidence would have been destroyed or disposed of before Lumpkin could obtain a warrant to have the appellant’s stomach pumped constituted exigent circumstances. See Cameron v. State, 861 So.2d 1145 (Ala.Crim.App.2003) (holding that the destruction of evidence and possibility that the evidence will be removed constitute exigent circumstances). Although we have not previously addressed this specific circumstance in Alabama, other jurisdictions have held that a law enforcement officer’s observation of a suspect swallowing a substance that he believes to be a controlled substance constitutes exigent circumstances that would justify having the suspect’s stomach pumped without first obtaining a warrant. See State v. Strong, 493 N.W.2d 834 (Iowa 1992); Oviedo v. State, 767 S.W.2d 214 (Tex.Ct.App.1989).[2] Therefore, the appellant’s argument is without merit.
B.
The appellant also contends that the trial court should have suppressed the cocaine Lumpkin seized from his stomach because Lumpkin did not have probable cause to approach him and investigate him initially. Lumpkin’s initial approach of the appellant’s vehicle did not constitute a stop. “ ‘The mere approach and questioning of ... persons [in a parked vehicle] does not constitute a seizure.’ W. LaFave, 3 Search and Seizure § 9.2(h) (2d ed.1987), and cases cited therein.” Christmas v. State, 624 So.2d 684, 685 (Ala.Crim.App.1993). See also Ex parte Betterton, 527 So.2d 747, 749-50 (Ala.1988); State v. Murray, 733 So.2d 945 (Ala.Crim.App.1999). However, the encounter became a stop when Lumpkin asked the appellant to get out of his vehicle. See Murray, supra.
“It is well established that
“ ‘a police officer may make a brief investigatory detention based upon a “reasonable suspicion” of criminal activity. This court in State v. Bodereck, 549 So.2d 542, 545-46 (Ala.Cr.App.1989), quoting from United States v. Post, 607 F.2d 847, 850 (9th Cir.1979), discussed “reasonable suspicion” as mentioned in Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] and stated:
“ ‘ “ ‘[T]he quantum of cause necessary to justify an investigatory stop is a “reasonable” or “founded” suspicion that the person has committed or is about to commit a criminal act.... The founded suspicion must arise from specific facts and not *1023 inchoate hunches, but the officer is entitled to draw inferences from those facts in light of his experience.’ ” ’
“Gaskin v. State, 565 So.2d 675, 677 (Ala.Cr.App.1990) (emphasis added). When evaluating whether reasonable suspicion for a stop exists, we require that the police officer be able to
“ ‘ “point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio. ... The appropriate question to ask is ‘... [W]ould the facts available to the officer at the moment of the seizure or the search “warrant a man of reasonable caution in the belief’ that the action taken was appropriate?’. Terry v. Ohio, ... Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973).”
“ ‘Sterling v. State, 421 So.2d 1375, 1379 (Ala.Cr.App.1982).’
“Gaskin, 565 So.2d at 677.
[[Image here]]
“... [T]he law does not require that the appellant be engaged in illegal activity before an officer may make an investigative stop.
“ ‘ “ ‘[T]he relevant inquiry in evaluating the presence of reasonable suspicion is “ ‘not whether particular conduct is “innocent” or “guilty,” but the degree of suspicion that attaches to particular types of non-criminal acts.’ ” ’ ” State v. Washington, 623 So.2d at 397 (quoting United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir.1990)) (quoting United States v. Sokolow, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989), and Illinois v. Gates, 462 U.S. 213, 243-44 n. 13, 103 S.Ct. 2317, 2334-35 n. 13, 76 L.Ed.2d 527 (1983)).’
“Hopkins v. State, 661 So.2d 774, 782 (Ala.Cr.App.1994). When reviewing the degree of suspicion that attaches to noncriminal behavior, courts should give great deference to the training and experience of police officers. This court has noted that ‘ “[w]hile many factors which can contribute to a reasonable suspicion of criminal activity are subject to a variety of interpretations, it is the experience of an officer that allows him to bring the factors together into a meaningful whole demonstrating reasonable suspicion of criminal activity.” ’ Id. at 779 (quoting 2 W. Rangel, Searches and Seizures, Arrests and Confessions § 13.4(a) (2d ed.1994)).”
Williams v. State, 716 So.2d 753, 755-56 (Ala.Crim.App.1998).
In this case, Lumpkin testified that he had seen the appellant sitting in his parked vehicle with the engine running for between thirty and forty-five minutes; that, once he approached the vehicle, he smelled the strong odor of alcohol on the appellant’s breath; that the appellant’s speech was slurred; and that the appellant was highly intoxicated. Based on this testimony, Lumpkin had reasonable suspicion to believe that the appellant was committing or about to commit the offense of driving under the influence, and he properly asked the appellant to get out of his vehicle.
C.
Finally, the appellant contends that the trial court should have granted his motion to suppress the cocaine Lumpkin seized from his stomach because Lumpkin did not have probable cause to arrest him.
“ ‘Probable cause ... to conduct a war-rantless arrest exists when police have knowledge or information of facts and circumstances sufficient in themselves to warrant a belief by a person of reason *1024 able caution that an offense has been or is being committed by the person to be arrested.’ Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964).”
State v. Adams, 643 So.2d 606, 609 (Ala. Crim.App.1992). Lumpkin testified that he saw the appellant take a bag out of his pocket; that the bag contained a waxy brown substance that he believed to be cocaine; that the appellant put the bag in his mouth; and that the appellant swallowed the bag despite his order to spit out the bag. Based on these facts, Lumpkin had probable cause to arrest the appellant for unlawful possession of a controlled substance.
II.
The appellant also argues that the trial court erroneously refused to allow him to introduce medical records into evidence and refused to allow him to question Lumpkin about those records. However, he did not reserve the right to raise this argument on appeal. Therefore, it is not properly before this court. See Rule 14.4(a)(l)(viii), Ala. R.Crim. P.
For the above-stated reasons, we affirm the trial court’s judgment.
AFFIRMED.
McMILLAN, P.J., and COBB and WISE, JJ., concur; SHAW, J., concurs specially, with opinion.

. During the guilty plea proceedings, the parties stipulated that the substance recovered from the appellant's stomach was cocaine.

. In Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the United States Supreme Court held that evidence that had been seized after Rochin’s stomach had been forcibly pumped could not be used against him. Specifically, it held that the law enforcement officers’ illegal entry into the appellant's residence and their subsequent brutal conduct shocked the conscience and that the admission of evidence seized pursuant to that conduct violated the Due Process Clause of the Fifth Amendment to the United States Constitution. However, in this case, the appellant does not argue that Lumpkin's actions violated his Fifth Amendment rights. Rather, he argues that the evidence was not admissible because the warrantless search and seizure violated the Fourth Amendment to the United States Constitution. Also, the record in this case does not involve the same type of illegal and brutal conduct as that involved in Rochin. Therefore, Rochin is distinguishable from this case.